UNITED STATES of America,
Plaintiff–Appellant,

v.

Jarrod Jeffrey HARRIS,
Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jarrod Jeffrey HARRIS, Defendant–
Appellant.

Nos. 93–5818, 93–5826.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1994.

Decided August 4, 1994.

**ARGUED:** Thomas Ernest Booth, U.S. Dept. of Justice, Washington, DC, for appellant. Susan Helene Cohen, Roanoke, VA, for appellee. **ON BRIEF:** Robert P. Crouch, Jr., U.S. Atty., Ruth E. Plagenhoef, Asst. U.S. Atty., U.S. Dept. of Justice, Washington, DC, for appellant. Gary L. Lumsden, Roanoke, VA, for appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and HAMILTON, Circuit Judges.

Affirmed in part, reversed in part, and remanded for resentencing by published opinion. Justice POWELL wrote the opinion, in which Judge WILKINSON and Judge HAMILTON joined.

## OPINION

POWELL, Justice:

The Government appeals and the Defendant cross-appeals in this criminal case. We affirm in part and reverse and remand in part.

### I

On the night of December 30, 1992, the Lynchburg Police Department received an anonymous telephone report of drug activity in room 238 of the Radisson Hotel. Six vice investigators, as well as two uniformed officers, went to the hotel. The front desk told them that the room had been rented for two nights and paid for in cash. The officers then went to the room. While the other officers waited in a nearby stairwell, Investigators Dantz and Lawton knocked on the door. Defendant Jarrod Harris answered the door. Lawton identified himself as a police officer and asked if he and Dantz could come in and ask some questions. Harris agreed.

Inside the room, Investigators Dantz and Lawton encountered two other men: Louis Davis and Jerry Davis. The officers told Harris that they were investigating a report of drug trafficking in the room—that they had a report of extensive foot traffic to and from the room. The men replied that they had been "partying." When the officers noticed a police scanner on a table in the room and a shoulder holster on a chair, they inquired whether there were guns in the room. Harris answered that he had one in the drawer of the bedside table, and headed towards it. Officer Lawton told him to "wait a

minute" and the officer retrieved the gun, a Smith and Wesson ten millimeter pistol. Once that loaded weapon was found, the officers patted down the other men but found no other weapons.

The officers next asked Harris whose room it was, and he replied that it belonged to his uncle or his dad—that he did not know whose room it was.[1] In response to questioning, all three men denied ownership of everything in the room. The officers then asked Harris if they could search the room and Harris consented. Several additional officers then entered the room to assist.

During the search,[2] the officers found on the bed a Ruger .45 semiautomatic pistol lying on a Chicago Bulls jacket; Louis Davis admitted both were his. The Bulls jacket contained eight rocks of crack cocaine, weighing 1.65 grams. Louis Davis also had $215 in small bills in his wallet. A second coat, a jean jacket that was hanging over the arm of a chair, contained two rocks of crack cocaine, weighing a total of 2.69 grams. No one claimed that jacket. The officers also found a single-edged razor with a whitish residue on it and a pager on the table with the police scanner.

Inside a gray coat hanging in the closet the officers found legal papers with Harris' name on them and a baggie containing 2.49 grams of crack cocaine in the form of flakes, called "shake."[3] Also in the closet was an electronic scale to measure in grams, some ammunition for the same caliber weapon as Harris' gun, a holster, two packages of single-edged razors, and $1,455 in cash in a pair of pants. Harris told the officers that he had won about $950 of the cash gambling, and that the remainder belonged to his uncle.

Harris and Louis Davis were indicted on drug and gun charges. The district court denied Harris' motion to suppress, finding that the officers had probable cause and could therefore seize Harris' firearm. The jury found Harris guilty of possession with intent to distribute cocaine base ("crack"),

see 21 U.S.C. § 841(a)(1), and of carrying a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. § 924(c). After the jury verdicts, the district court granted in part Harris' motion for judgment of acquittal, concluding that the evidence was insufficient to support a finding of intent to distribute. The court reduced the drug conviction to one for simple possession and consequently dismissed the firearm conviction.

II

■ In his cross-appeal, Harris contends that the district court should have suppressed the evidence because the officers' actions, when considered in their entirety, constituted an illegal seizure of him that vitiated the voluntariness of his consent. "In determining whether a person has been 'seized,' the issue is whether 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Gordon*, 895 F.2d 932, 937 (4th Cir.) (citations omitted), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). Whether someone has been seized is a question of fact reviewed under the clearly erroneous standard. *Id.*

■ Harris primarily argues that the officers' initial entry into the room constituted an illegal seizure of him. The district court's finding that the officers had probable cause before they seized the gun from the nightstand implicitly but necessarily includes a finding that the officers were legally present in the room at the time they seized the weapon. The uncontroverted testimony at the suppression hearing that Harris consented to the officers' entry into the room supports this finding. The officers knocked on the door and requested permission to enter the room and ask the men some questions. They did not tell Harris that he had to allow them in the room or that he was not free to leave. Under these circumstances, we believe that Harris was not seized at the time the officers entered the room.

---

1. The room was rented to a "Kerry Paige." The police never located an individual by that name.

2. At some point during the search, two men approached the room but turned and left upon seeing the police. The two men threw rocks at the window of the room before leaving in a cab.

3. According to testimony at trial, "shake" is created when crack rocks are broken into smaller crack rocks or when crack rocks are crumbled. Investigator Dantz testified that shake can be sprinkled on marijuana cigarettes, smoked in a pipe, or cooked back into rock form.

■ Even assuming that Harris was seized at some point after the officers' entry into the room but prior to Harris' consent to search, any such seizure was lawful. From their lawful vantage point within the room, the officers' observations provided them with reasonable articulable suspicion to detain him for investigative purposes. *See Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). These observations corroborated the report they had already received of drug trafficking in the room: drug paraphernalia and a shoulder holster were in plain view, and Harris admitted having a gun. Given these circumstances, the officers were entitled to detain Harris and to seize Harris' gun for their own protection. *See United States v. Reed*, 935 F.2d 641, 643 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991).

Harris also contends that his consent to search the room was not voluntary because it was tainted by the allegedly unlawful seizure. Having found that the seizure, if any, was lawful, we conclude that the totality of the circumstances supports a finding that the consent to search was voluntary. There is no evidence in the record to support a contrary conclusion.

Accordingly, upon review of the record, we affirm the district court's denial of Harris' motion to suppress.

### III

■ The United States contends that the district court erred when it granted in part Harris' motion for judgment of acquittal. To determine whether the court erred, we must view the evidence in the light most favorable to the government and consider whether any rational trier of fact could have found Harris guilty beyond a reasonable doubt. *United States v. Campbell*, 977 F.2d 854, 856 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 716 (1993). Our review is *de novo. Id.*

The district court concluded that the evidence showed only that Harris possessed the jacket found in the closet, which contained the 2.49 grams of shake. The court also concluded that the possession of shake is more consistent with personal use than it is with distribution. It therefore reduced the

jury's conviction of Harris to simple possession and dismissed the firearm conviction.

■ The Government contends that the evidence supports a conclusion that Harris intended to distribute the 2.49 grams of shake found in the gray coat containing Harris' legal papers. To support a conviction of possession with the intent to distribute the shake, the evidence must show that Harris knowingly and intentionally possessed it and that he intended to distribute the shake itself, not merely that he distributed other crack cocaine. *United States v. Jones*, 945 F.2d 747, 748–49 (4th Cir.1991). Although "[p]ossession of a small quantity of drugs by itself is an insufficient basis from which intent to distribute may be inferred," such intent may be inferred from possession of drug paraphernalia. *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir.1990), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 106 (1991). We find evidence in the record from which a reasonable jury could conclude that Harris intended to distribute the shake.

■ Testimony at trial indicated that the amount of shake found in Harris' jacket was consistent with possession for distribution. Two officers testified that cocaine base is sometimes sold in the form of shake. One of these officers also testified that the 2.49 grams of shake could be sold for $200, or could be repackaged into smaller baggies and sold for a total of between $250 and $300. These facts distinguish this case from *United States v. Jones*, upon which Harris relies. In *Jones*, the evidence revealed that the police recovered only trace amounts of cocaine residue on drug paraphernalia and elsewhere. *Jones*, 945 F.2d at 749. We thus reversed Jones' conviction for possession with intent to distribute "[b]ecause of the absence of evidence, or a reasonable inference that can be drawn from the evidence, that Jones intended to distribute the traces of cocaine the police found." *Id.* In this case, by contrast, the government produced evidence from which a reasonable jury could infer that Harris intended to distribute the cocaine base, in the form of shake, that was found in his jacket.

Other evidence recovered from the room also supports that conclusion:[4] specifically, Harris' gun, the scales found in the closet, a pager, a police scanner, the single-edged razor blades, and the amount of cash—which was mostly in small bills and of which Harris claimed about $950—found in a pair of pants in the closet. In addition, there was evidence of heavy foot traffic to the room the previous night. The presence of Harris' gun in the bedside table and his clothes, ammunition matching his gun, and his money in the closet could support an inference by the jury that he constructively possessed the drug paraphernalia in the closet and on the table, and that he was present the night before. *See United States v. Morrison,* 991 F.2d 112, 114–15 (4th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993).

On the basis of this evidence, and the entire record, we conclude that the Government produced sufficient evidence respecting the shake found in the gray coat to support the jury's verdict on the possession with intent to distribute charge.[5] We thus reverse the district court's reduction of this conviction to one for mere possession, and reinstate the jury verdict.

## IV

Because we reinstate the jury verdict on the possession with intent to distribute count, we also reinstate the conviction for possession of a firearm during and in relation to a drug trafficking offense. *See Fisher,* 912 F.2d at 731 (stating that possession with intent to distribute is a drug trafficking crime for the purposes of § 924(c)). We therefore reverse the district court's grant of the partial judgment of acquittal, and remand the case for resentencing. As to Harris' cross-appeal, we affirm the district court's denial of his motion to suppress.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.*

---

**4.** This evidence distinguishes this case from *United States v. Fountain,* 993 F.2d 1136 (4th Cir. 1993), in which we reversed a conviction for possession with intent to distribute marijuana. In *Fountain,* the only evidence besides the defendant's possession of 2.3 grams of marijuana to support the "intent to distribute" element was his possession of two firearms and rolling papers, and his presence in a drug trafficking area.

**5.** We thus need not reach the Government's alternative argument that the evidence is sufficient to support a conclusion that Harris constructively possessed with the intent to distribute the crack cocaine found in the unclaimed jean jacket and that found in the Chicago Bulls jacket claimed by Louis Davis.