**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-4531**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PAMELA YVETTE HOFFLER-RIDDICK,

Defendant - Appellant.

———————————

**No. 06-4701**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

PAMELA YVETTE HOFFLER-RIDDICK,

Defendant - Appellee.

———————————

Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. Walter D. Kelley, Jr., District Judge. (4:05-cr-00009-WDK)

———————————

Argued: September 28, 2007          Decided: November 2, 2007

———————————

Before TRAXLER and SHEDD, Circuit Judges, and Norman K. MOON, United States District Judge for the Western District of Virginia, sitting by designation.

---

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Stephen A. Hudgins, Newport News, Virginia, for Appellant/Cross-Appellee. Lisa Rae McKeel, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, Pamela Yvette Hoffler-Riddick was convicted of one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I).  The district court granted Hoffler-Riddick's post-trial motion for judgment of acquittal under Fed. R. Crim. P. 29(c) as to the substantive money laundering counts.  Hoffler-Riddick appeals her conviction and sentence for conspiracy to commit money laundering, and the Government cross-appeals the district court's judgment of acquittal.  For the reasons that follow, we affirm the conspiracy conviction and reverse the district court's judgment of acquittal.

I

From 1994 until February 2000, Hoffler-Riddick was employed by the City of Norfolk, Virginia, as a teacher, principal, and administrator.[1]  In 1996, she began a romantic relationship with John Cecil McBride, a financial advisor with the brokerage firm of Wheat First Securities (now known as Wachovia Securities).  In 1998, McBride began conducting business with Aaron Burton, a major drug dealer in Richmond, Virginia.  McBride testified at trial that

[1]We draw the facts largely from the written opinion of the district court, viewing them in the light most favorable to the Government.  United States v. Harris, 31 F.3d 153, 156 (4th Cir. 1994).

3

when he first met Burton, he understood Burton to be a former drug dealer who now had a legitimate business. In reality, Burton was still dealing drugs. Burton asked McBride to help him invest the profits he earned from this supposedly legitimate business, and McBride soon began assisting Burton with all of his financial needs.

One of the services McBride provided to Burton was help in purchasing a vehicle. Burton's credit was so poor that no financial institution would lend him the money to make such a purchase. To circumvent this problem, McBride began searching for a nominee to obtain a loan and "own" the vehicle while Burton made the payments. After McBride unsuccessfully solicited several business associates for the task, Hoffler-Riddick agreed to purchase a vehicle in her name so long as someone else paid the vehicle loan and she did not have any responsibility for ongoing expenses such as insurance or personal property taxes. Hoffler-Riddick and McBride also agreed that the vehicle would remain in her name for only one year.

On February 20, 1998, Hoffler-Riddick purchased a 1998 Chrysler Town and Country van on Burton's behalf. McBride completed and Hoffler-Riddick signed a number of documents relating to the purchase, including loan and insurance applications and a vehicle registration. McBride paid for the van by taking $8,000 in cash from Burton and converting it into a cashier's check with

4

which to make the down payment.  The balance of the purchase price, approximately $25,000, was financed in Hoffler-Riddick's name through Chrysler Financial.  McBride made the monthly payments of $473.32 via checks drawn on his personal accounts, for which he was reimbursed in cash by Burton.  On May 31, 2000, McBride paid off two loans totaling $6,560 that Hoffler-Riddick owed to the Norfolk School Employees Federal Credit Union as a reward to Hoffler-Riddick for serving as nominal owner of the van.

In September 2000, more than two years after the vehicle purchase, Hoffler-Riddick demanded that McBride honor their agreement and pay off the Chrysler Financial loan.  To comply with Hoffler-Riddick's demand, McBride obtained $16,650 in cash from Burton.  On September 28, 2000, McBride converted this cash into two cashier's checks in the amounts of $9,000 and $7,629.74,[2] which he forwarded to Chrysler Financial.

Although Hoffler-Riddick did not know at the time she purchased the van that Burton's money represented proceeds of drug distribution activities, she was fully aware of that fact by September 2000, when she demanded that the loan be paid in full. McBride informed Hoffler-Riddick on numerous occasions about the true source of Burton's money.  Furthermore, in April 1999 Hoffler-Riddick accepted McBride's invitation to take an afternoon drive

---

[2]McBride explained that checks in amounts less than $10,000 were used in order to avoid federal reporting requirements.

5

with him from his home in Chesapeake, Virginia to New Kent County, Virginia. During the trip, McBride carried three kilograms of cocaine for delivery to Burton, which Hoffler-Riddick examined out of curiosity.

Despite learning that Burton's money came from drug dealing, Hoffler-Riddick continued to help McBride convert Burton's cash into other assets. For example, in May 1999, McBride agreed to help Burton use his drug money to purchase a house located at 329 Center Street in Hampton, Virginia (the Center Street Property). McBride gave Hoffler-Riddick $10,000 in cash and instructed her to convert it into cashier's checks. On May 20, 1999, Hoffler-Riddick arranged for her goddaughter and subordinate employee, Patrice Jones, to use the cash to purchase two $5,000 cashier's checks from NationsBank (now Bank of America) in Norfolk. However, the checks could not be used because they were made payable to a title company rather than to the attorney closing the transaction. On May 24, 1999, acting on McBride's instructions to remedy the situation, Hoffler-Riddick had Jones exchange the checks for new cashier's checks made payable to the proper party. Using these and other laundered funds, Burton purchased 329 Center Street for $95,000.[3]

---

[3]Hoffler-Riddick participated in other money laundering activities as well, which we need not recount here.

6

II

At trial, Hoffler-Riddick was convicted on counts 40-43 of the Indictment, which charged her with "concealment" money laundering stemming from the September 2000 payoff of Burton's van, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[4] Following trial, the district court granted Hoffler-Riddick's motion for judgment of acquittal under Fed. R. Crim. P. 29(c), and the Government appeals. We review de novo the district court's entry of a judgment of acquittal. United States v. Harris, 31 F.3d 153, 156 (4th Cir. 1994). In reviewing that judgment, we must determine whether the evidence, viewed in the light most favorable to the Government, could have permitted a rational jury to convict Hoffler-Riddick on that charge. Id.

In order to obtain a conviction for concealment money laundering, the Government was required to prove: (1) Hoffler-Riddick conducted or attempted to conduct a financial transaction having at least a de minimis effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a de minimis effect on, interstate commerce; (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity;

---

[4]Although the Indictment charged Hoffler-Riddick with violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(1)(B)(ii) and (a)(2), the Government proceeded at trial solely on a concealment theory.

7

(3) Hoffler-Riddick knew that the property involved represented the proceeds of some form of unlawful activity; and (4) Hoffler-Riddick knew that the transaction was designed, in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity. United States v. Wilkinson, 137 F.3d 214, 221 (4th Cir. 1998). Only the final element is at issue on appeal.

The district court concluded that the Government had failed to prove the fourth element of concealment money laundering, explaining that "[t]here was simply no evidence that defendant Hoffler-Riddick initiated the loan payoff transaction for the purpose or design of concealing assets." J.A. at 2064 (emphasis added). In reaching this conclusion, the district court misstated the Government's burden of proof. Under the law, "[t]he Government need not prove that the defendant had the purpose of concealing the proceeds of illegal activity. Instead, . . . the Government must only show that the defendant possessed the knowledge that the transaction was designed to conceal illegal proceeds." United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992) (emphasis in original).

Applying the proper standard, we hold that there was sufficient evidence to permit the jury to conclude that Hoffler-Riddick knew that the loan payoff transaction was designed to conceal the fact that the payoff funds were the proceeds of

8

Burton's illicit drug activity.  The evidence established that by September 2000, Hoffler-Riddick knew that Burton, the beneficial owner of the van and the source of the payoff funds, was a drug dealer with no legitimate income.  Through her assistance in the purchase of the Center Street Property, Hoffler-Riddick had also become familiar with the system Burton and McBride had devised for laundering Burton's drug proceeds:  Burton would provide cash, which would then be converted into cashier's checks in amounts less than $10,000 in order to avoid reporting requirements.  The obvious purpose of both the use of cashier's checks and the structuring was to conceal the illicit source of the funds.  Based on this history, the jury was entitled to conclude that Hoffler-Riddick knew, or was willfully blind to the fact, that the loan payoff would be accomplished in the same fashion, and in fact, it was.  Accordingly, we reverse the district court's entry of judgment of acquittal as to counts 40-43 of the Indictment.

III

Hoffler-Riddick also challenges the sufficiency of the evidence to support her conviction for money laundering conspiracy, as well as procedural rulings made at trial and the calculation of

9

her sentence.[5]   We find no error in these aspects of the proceedings below.

IV

Based on the foregoing, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

---

[5]We lack jurisdiction to review Hoffler-Riddick's claim that the district court erred in refusing to grant a downward departure, and therefore do not reach this issue.  See United States v. Quinn, 359 F.3d 666, 682 (4th Cir. 2004).