**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4284**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

SANTOS ANIBAL CABALLERO FERNANDEZ, a/k/a Garra,

            Defendant – Appellant.

**No. 11-4300**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

JOHNNY ELIAS GONZALEZ, a/k/a Solo,

            Defendant – Appellant.

**No. 11-4319**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

ELVIN PASTOR FERNANDEZ-GRADIS, a/k/a Tigre, a/k/a Juan Alberto Irias, a/k/a Freddy, a/k/a Flaco,

        Defendant – Appellant.

------------------------

**No. 11-4320**

------------------------

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JULIO CESAR ROSALES LOPEZ, a/k/a Stiler,

        Defendant – Appellant.

------------------------

**No. 11-4418**

------------------------

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

CARLOS ROBERTO FIGUEROA-PINEDA, a/k/a Drogo,

        Defendant – Appellant.

------------------------

**No. 11-4458**

------------------------

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JUAN GILBERTO VILLALOBOS, a/k/a Smokey, a/k/a Smoke,

Defendant – Appellant.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:08-cr-00134-RJC-23; 3:08-cr-00134-RJC-DSC-18; 3:08-cr-00134-RJC-DSC-6; 3:08-cr-00134-RJC-DSC-4; 3:08-cr-00134-RJC-DSC-14; 3:08-cr-00134-RJC-DSC-5)

_____

Argued: September 18, 2012                    Decided: May 14, 2013

_____

Before TRAXLER, Chief Judge, and DIAZ and THACKER, Circuit Judges.

_____

No. 11-4284 affirmed in part, reversed in part, and remanded; No. 11-4300, No. 11-4319, No. 11-4320, No. 11-4418, and No. 11-4458 affirmed by unpublished per curiam opinion. Chief Judge Traxler wrote a separate opinion concurring in part and dissenting in part.

_____

**ARGUED:** Casper Fredric Marcinak, III, SMITH MOORE LEATHERWOOD, LLP, Greenville, South Carolina; David Quentin Burgess, LAW OFFICE OF DAVID Q. BURGESS, Charlotte, North Carolina; John Clark Fischer, RANDOLPH & FISCHER, Winston-Salem, North Carolina; Roderick Morris Wright, Jr., WRIGHT LAW FIRM OF CHARLOTTE, PLLC, Charlotte, North Carolina, for Appellants. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Harold Bender, LAW OFFICE OF HAROLD BENDER, Southport, North Carolina, for Appellant Gonzales; Richard E. Beam, Jr., HUBBARD & BEAM, Gastonia, North Carolina, for Appellant Lopez. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

3

PER CURIAM:

I.

La Mara Salvatrucha ("MS-13") is a worldwide street gang with Los Angeles origins. It was formed in the 1980's by refugees fleeing to the United States from war-torn Central American countries. While MS-13 was originally formed for protection of its members, its current objective is to amass wealth, power, and territory.

There are six Appellants in this matter, all members of MS-13: (1) Santos Anibal Caballero Fernandez ("Caballero Fernandez"); (2) Johnny Elias Gonzales ("Gonzales"); (3) Elvin Pastor Fernandez-Gradis ("Fernandez-Gradis"); (4) Julio Cesar Rosales Lopez ("Lopez"); (5) Carlos Roberto Figueroa-Pineda ("Figueroa-Pineda"); and (6) Juan Gilberto Villalobos ("Villalobos"). In June, 2008, Appellants, along with 20 other MS-13 members, were tried and convicted of various crimes related to their participation in the gang in the United States. The convictions relevant to this appeal are: (1) each Appellant's conviction for conspiracy to commit racketeering; (2) Appellant Caballero Fernandez's conviction as an accessory after-the-fact to the murder of Ulysses Mayo; and (3) Appellant Figueroa-Pineda's two convictions of possession of marijuana with intent to distribute and conviction of possession of a

4

firearm in furtherance of a drug trafficking crime.[1]  Appellant Villalobos also appeals the district court's decision to apply an obstruction of justice enhancement to his sentence.

Appellants collectively challenge their convictions on several fronts.  First, Appellants argue the evidence was insufficient to establish that they each entered into an agreement to commit two predicate acts of racketeering as required for a conviction of conspiracy to commit racketeering. Second, Appellants argue that the district court failed to adopt adequate safeguards to minimize the prejudice of its use of an anonymous jury.  Third, Appellants argue that the district court erred in failing to give a "multiple conspiracy" instruction to the jury.  Finally, Appellants argue that, even if the first three errors are individually harmless, the combined effect of those errors triggers the cumulative error doctrine, compelling reversal.

As noted, several Appellants also individually challenge their respective convictions and sentences. Specifically, Appellant Caballero Fernandez challenges his conviction for accessory-after-the-fact to murder, arguing that the evidence does not establish beyond a reasonable doubt that

---

[1]  For ease of organization, the facts related to each of these convictions are detailed in the applicable sections below.

he knew the victim was dead or dying. Appellant Figueroa-Pineda challenges his convictions for possession with intent to distribute and for possession of a firearm in furtherance of a drug trafficking offense, arguing that the evidence established neither intent to distribute nor use of a weapon "in furtherance" of drug trafficking offenses. Finally, Appellant Villalobos argues the evidence was insufficient to establish that he obstructed justice.

We affirm as to each issue on appeal, with the exception of Appellant Caballero Fernandez's conviction for accessory-after-the-fact, which we reverse. We also remand Appellant Caballero Fernandez's case for resentencing.

II.

A.
Conspiracy to Commit Racketeering

1.

Each Appellant was convicted of engaging in a conspiracy to commit racketeering beginning at least in or about 2003. Following these convictions, each Appellant filed a motion for a judgment of acquittal. These motions were denied and this appeal followed.

2.

We review the denial of a motion for judgment of acquittal de novo. United States v. Penniegraft, 641 F.3d 566,

571 (4th Cir. 2011). Where a defendant challenges the sufficiency of the evidence to support a jury's guilty verdict, we view all evidence and draw all inferences in favor of the government. Id. We will sustain the verdict as long as any rational fact finder would find the essential elements beyond a reasonable doubt. United States v. Higgs, 353 F.3d 281, 313 (4th Cir. 2003).

3.

The conspiracy provision to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), makes it a crime to conspire to violate any one of RICO's three substantive provisions.[2] Here, Appellants were convicted of conspiracy to violate § 1962(c), which contains three elements: (1) the conduct, (2) of an enterprise, (3) through a pattern of racketeering.[3] RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of

---

[2] 18 U.S.C. § 1962(d) provides as follows: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

[3] 18 U.S.C. § 1962(c) provides as follows: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering" requires a defendant to commit at least two predicate acts of "racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" includes, inter alia, any act or threat involving murder, robbery, extortion, or dealing in a controlled substance chargeable under state law and punishable by imprisonment for more than one year. 18 U.S.C. § 1961(1).

Generally, to be convicted of "conspiracy" to commit a federal crime, a defendant must commit an overt act in furtherance of the object of the conspiracy. 18 U.S.C. § 371. There is no such requirement under RICO. United States v. Salinas, 522 U.S. 52, 63 (1997) ("The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371."). A defendant is guilty of conspiracy under RICO if he "'knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts.'" United States v. Mouzone, 687 F.3d 207, 218 (4th Cir. 2012) (quoting United States v. Wilson, 605 F.3d 985, 1018-19 (D.C. Cir. 2010)).

Naturally, direct evidence of such an agreement is often scarce. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) ("By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence

8

of such an agreement."). As such, conspiracy is typically proven by circumstantial evidence. Id. at 857-58.

Appellants argue that the evidence was insufficient to establish an agreement to commit two predicate acts. This argument lacks merit. There is ample evidence that each Appellant was a member of MS-13 and agreed to commit at least two predicate acts.

Specifically, Appellant Caballero Fernandez attended a February 29, 2008 MS-13 meeting. Moreover, the evidence indicates that Appellant Caballero Fernandez was a leader of MS-13, as the February 29, 2008 meeting he attended was only open to "runners" or "the older people . . . that have more of a say so in the clique." J.A. 1339.[4] According to an informant who testified at trial, those present at the meeting discussed taxing other drug dealers, purchasing guns, and organizing the gang. And, Appellant Caballero Fernandez was photographed displaying gang signs at the February 29, 2008 meeting.

Additionally, Appellant Caballero Fernandez, an illegal alien, illegally possessed a firearm on October 29, 2006. As a result, he was convicted of being an illegal alien

---

[4] Citations to the joint appendix ("J.A.") refer to the joint appendix filed by the parties in this case.

9

in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) in the proceedings below.

Appellant Gonzales participated in an attempt to rob a Virginia jewelry store with other MS-13 members. Additionally, he facilitated the purchase of an SKS rifle for a fellow gang member. He was also present at a Charlotte Mall when gang members had an armed confrontation with a rival gang.

Appellant Fernandez-Gradis murdered Ulysses Mayo. Appellant Fernandez-Gradis was also present at the February 29, 2008 meeting discussed above. Moreover, he was a leader of MS-13, as evinced by the fact that he approved a name-change of one of the MS-13 cliques.[5]

Appellant Julio Lopez was also a leader of MS-13 in Charlotte. He came to Charlotte at the direction of Manuel Ayala, an El Salvador-based MS-13 leader. He played a large role in several MS-13 meetings and carried a firearm to at least one of them. He was also present at a Mexican restaurant in Greensboro, North Carolina where Alejandro Umana, another MS-13 member, shot and killed two innocent civilians for verbally

---

[5] A clique is a local subpart of MS-13, usually affiliated with a particular geographic area or landmark. As the government's expert testified at trial, each clique is integrated into the global MS-13 operation.

10

disrespecting MS-13.[6]  Appellant Lopez left the restaurant with Umana and assisted in his escape.  Finally, Appellant Lopez was a "middle man" in Appellant Villalobos's drug operation.

Appellant Figueroa-Pineda attended a meeting where MS-13 members discussed killing the witnesses to the Greensboro restaurant murder.  He was also present at the aforementioned meetings in February and March of 2008 where he was photographed flashing MS-13 gang signs.  Appellant Figueroa-Pineda also sold marijuana from his apartment.

Appellant Villalobos was a senior member of MS-13.  He controlled nightclubs where he sold drugs and taxed others who did the same.  He also supplied guns to other MS-13 members for use when they traveled to meetings.  In January 2008, he hosted an MS-13 meeting in his garage.  He was also present at the February 2008 meeting discussed above.

Appellants also argue that the government's reliance on evidence of attendance at MS-13 meetings to support the RICO convictions is improper as it is evidence of "mere association" and, therefore, is not sufficient to establish an agreement to commit a predicate act.  Mouzone, 687 F.3d at 218 ("We caution that the RICO conspiracy statute does not 'criminalize mere

---

[6]  Umana was tried and convicted along with Appellants. However, his case is not currently before us on appeal.

11

association with an enterprise.'") (quoting <u>Brouwer v. Raffensperger, Hughes & Co.</u>, 199 F.3d 961, 965 (7th Cir. 2000)). This argument fails inasmuch as the evidence established far more than mere association. As noted above, the evidence was that at these meetings, members of MS-13 would discuss their plans to commit various acts of racketeering including murder, distribution of illegal drugs, and extortion. Moreover, the evidence established that many Appellants were leaders, as opposed to mere associates, of MS-13.

## B.
### Anonymous Jury

#### 1.

On a motion from the government, the district court empanelled an anonymous jury. During voir dire, the district court instructed the members of the jury pool that all of the security measures which had been taken (mainly the presence of additional security guards, including snipers, at the courthouse) were standard in every federal case. The district court did not otherwise specifically comment on juror anonymity. The district court did, however, ask some demographic questions of the jury pool (i.e. what type of work they did, approximately where they lived, etc.). Additionally, at the conclusion of voir dire, the district court asked additional questions suggested by defense counsel.

12

2.

Under 28 U.S.C. § 1863(b)(7), a district court is empowered to empanel an anonymous jury whenever "the interests of justice so require."[7] Recently, in United States v. Dinkins, 691 F.3d 358 (4th Cir. 2012), we held that an anonymous jury is appropriate where, "there is strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised if the jury does not remain anonymous." Id. at 372. If an anonymous jury is warranted, a district court must adopt "reasonable safeguards" to minimize any resulting prejudice. Id.

3.

Appellants properly concede that an anonymous jury was appropriate here. Thus, the only issue is whether the district court adopted adequate safeguards. Appellants contend the district court failed to adopt adequate safeguards by not

---

[7] 28 U.S.C. § 1863(b)(7) reads as follows:

Among other things, [the plan for random jury selection] shall fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public. If the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case where the interests of justice so require.

13

providing an explicit, non-prejudicial explanation for juror anonymity.

In making this argument, Appellants cite cases from our sister circuits in which various explanations for juror anonymity were found to be sufficient.[8]  However, none of these cases indicate that an explicit explanation for juror anonymity is a necessary safeguard.  Accordingly, they are of limited value here.

Moreover, Dinkins indicates that the absence of any specific explanation for juror anonymity minimizes any potential prejudice.  The district court in Dinkins did not inform the jury that they were anonymous.  Likewise, nothing in the juror questionnaire in Dinkins implied anonymity.  In that circumstance, we held, "the district court's communications to the venire members, and ultimately the jurors, properly followed 'the generally accepted practice for minimizing prejudice which is to downplay (not accentuate) the significance of the juror

---

[8] See United States v. Lawson, 535 F.3d 434, 439–42 (6th Cir. 2008) (district judge told the jury anonymity was required by the unusually large number of prospective jurors and defendants and that anonymity would help ensure a fair trial); United States v. Crockett, 979 F.2d 1204, 1216–17 (7th Cir. 1992) (district judge told jury anonymity was designed to avoid any contact between the jurors and the parties to ensure that both sides received a fair and impartial trial); United States v. Thomas, 757 F.2d 1359, 1364–65 (2d Cir. 1985) (district judge told jurors their anonymity was designed to ward off members of the press and to protect their privacy).

14

anonymity procedure.'" Dinkins, 691 F.3d at 378-79 (quoting United States v. Ochoa-Vasquez, 428 F.3d 1015, 1037 (11th Cir. 2005)).

Here, as in Dinkins, the district court properly downplayed juror anonymity. As noted, the court simply advised the jury pool that the security measures which had been taken were "standard in every case" without specifically mentioning anonymity. J.A. 404. Moreover, aside from juror anonymity, voir dire was conducted in the usual way. Based on this, the government correctly argues that the jury likely did not even realize that anything unusual had occurred. Accordingly, the safeguards adopted by the district court were sufficient.

## C.
### Multiple Conspiracy Instruction

#### 1.

Appellants allege the district court erred by failing to instruct the jury that the government's evidence related to multiple conspiracies rather than a single conspiracy. Such an instruction is warranted when "the proof of multiple conspiracies was likely to have confused the jury into imputing guilt to [the defendant] as a member of one conspiracy because of the illegal activity of members of the other conspiracy." United States v. Roberts, 262 F.3d 286, 294 (4th Cir. 2001).

15

Such an instruction was not requested below. However, on appeal, Appellants allege that the failure to give such an instruction was in error because, in the absence of that instruction, the evidence established that the Appellants were members of several small conspiracies as opposed to one large one. Accordingly, Appellants contend this likely confused the jury and caused them to wrongfully impute guilt from members of one conspiracy to members of another.

2.

Because Appellants failed to request such an instruction below, we review for plain error. United States v. Jeffers, 570 F.3d 557, 567 (4th Cir. 2009). Under "plain error" review, a court may not correct an alleged error unless the following three conditions are met: (1) there was an error, (2) the error is plain, and (3) the error affected a defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993); see also Fed. R. Crim. P. 52(b). If these three conditions are met, an appellate court may correct the error. Olano, 507 U.S. at 732. While this is a discretionary matter, the Supreme Court has held that an appellate court should only exercise this discretion where the error "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." Id. (quoting United States v. Young, 470 U.S. 1, 15 (1985)). The appellant bears the burden of persuasion to

16

show that this occurred. <u>United States v. Nicolaou</u>, 180 F.3d 565, 570 (4th Cir. 1999).

### 3.

In making this argument, Appellants point to the following facts: (1) there were a number of MS-13 cliques in Charlotte and other cities throughout the region; (2) MS-13 members from the various cliques did not know all of the other members because they operated on opposite sides of town; and (3) efforts to integrate the various area cliques had failed.

Appellants ignore significant evidence to the contrary. Specifically, MS-13 has a global mission: to amass power and control territory. In furtherance of this mission, MS-13 cliques share weapons and information and members are able to move freely among different cliques. Moreover, as noted above, MS-13's organizational structure resembles a franchisor-franchisee system. This mode of organization strongly indicates that Appellants were all members of the same conspiracy. Accordingly, the district court did not err, much less plainly err, by not giving a multiple conspiracy instruction to the jury.

### D.
### Cumulative Error

Appellants argue that, even if the first three alleged errors (i.e. sufficiency of the evidence for the conspiracy

17

convictions, the anonymous jury, and the absence of a multiple conspiracy instruction) are individually harmless, the cumulative effects of these errors compel a new trial based upon the "cumulative error doctrine." We will order a new trial based on the cumulative error doctrine where two or more individually harmless errors have the combined effect of impacting a defendant's substantial rights. United States v. Martinez, 277 F.3d 517, 532 (4th Cir. 2002). However, the cumulative error doctrine is inapplicable here, as we find no error in the district court's resolution of any of these three issues. Accordingly, Appellants' cumulative error argument is without merit.

## E.
### Accessory After the Fact

#### 1.

Appellant Caballero Fernandez was convicted as an accessory-after-the-fact to the murder of Ulysses Mayo. On April 12, 2008, Appellants Caballero Fernandez and Fernandez-Gradis were at a party at a neighborhood home. Later that night, Ruben Ibarra arrived to the party. Ibarra was accompanied by his cousin, Ulysses Mayo. Both men were wearing red clothing, the color of a rival gang. This angered Appellants Fernandez-Gradis and Caballero Fernandez. As Ibarra and Mayo were leaving, Appellants Fernandez-Gradis and Caballero

18

Fernandez followed them to their car. An eyewitness testified that it was "kind of dark" at this time. J.A. 2143. In fact, the record indicates that the murder occurred at approximately 11:00 pm.

When Appellants Caballero Fernandez and Fernandez-Gradis arrived at the car, Mayo was sitting in the passenger seat with the window up. Ibarra was in the driver's seat with the window down. The car's engine was running. With his firearm drawn, Appellant Fernandez-Gradis knocked on the passenger-side window. Mayo tried to roll the window down but the window was stuck. Appellant Fernandez-Gradis then shot through the window. Appellant Caballero Fernandez was standing a few feet from Appellant Fernandez-Gradis at this time. A witness, standing on the driver's side, testified that Mayo gasped and moaned when the shots were fired.

As soon as the shots were fired, Ibarra drove off. Appellant Caballero Fernandez then got in his car, instructing Appellant Fernandez-Gradis to get in with him. The two then attempted to follow Ibarra and Mayo. Ultimately, Ibarra escaped and Mayo was taken to a local hospital. Mayo was pronounced dead later that night. Appellant Caballero Fernandez remained with Appellant Fernandez-Gradis for the rest of the night. A cooperating witness testified Appellant Caballero Fernandez was distracted and did not speak to anyone. A month later, police

officers stopped a car with six people inside, including Appellant Caballero Fernandez. Appellant Caballero Fernandez was sitting in the middle of the back seat. While searching the vehicle, the officers found several handguns, including the gun that Appellant Fernandez-Gradis used to kill Ulysses Mayo. On these facts, Appellant Caballero Fernandez was convicted as an accessory-after-the-fact for the murder of Ulysses Mayo.[9] Following his conviction, Appellant Caballero Fernandez filed a motion for judgment of acquittal notwithstanding the verdict. The district court denied this motion and Appellant Caballero Fernandez appealed.

2.

The denial of a motion for judgment of acquittal is reviewed de novo. Penniegraft, 641 F.3d at 571; Hickman, 626 F.3d at 762. When the challenge is based on sufficiency of the evidence, we view the evidence and all reasonable inferences in favor of the government. Penniegraft, 641 F.3d at 571. We will sustain the verdict if any rational fact finder would find the

---

[9] The controlling statute is 18 U.S.C. § 3. This statute reads as follows: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

20

essential elements beyond a reasonable doubt.  <u>Higgs</u>, 353 F.3d at 313.

3.

On appeal, Appellant Caballero Fernandez argues the evidence was insufficient to sustain his conviction.  His argument rests on <u>United States v. McCoy</u>, 721 F.2d 473 (4th Cir. 1983).  There, we held that, in order to be convicted as an accessory-after-the-fact to murder, the accessory must have "knowledge that [the decedent] was dead or dying at the time of his decision [to provide assistance]."  <u>McCoy</u>, 721 F.2d at 475. Appellant Caballero Fernandez argues there is no evidence that he knew that Mayo was dead or dying at any point while he was allegedly assisting Appellant Fernandez-Gradis.  Specifically, Appellant Caballero Fernandez argues that, because he drove away quickly after the shots were fired, he never had the chance to observe whether Mayo was dead or dying, or if he had even been shot.  Appellant Caballero Fernandez further argues that there is no evidence that he learned of Mayo's death at any point prior to his arrest.

The government argues the facts were sufficient to permit a reasonable jury to infer the requisite knowledge. However, we are of the view that, even construing the evidence in a light most favorable to the government, no rational fact-finder could have found that Appellant Caballero Fernandez <u>knew</u>

21

that Ibarra was dead or dying during the relevant time period. This is true for several reasons.

First, Appellant Caballero Fernandez is correct that, because he sped away quickly after the shots were fired, he did not have time to observe whether Mayo was dead or dying. At most, the fact that Appellant Caballero Fernandez was standing next to the car when shots were fired and may have heard the victim moan permits an inference that he knew that Mayo had been shot. It does not follow that Appellant Caballero Fernandez knew that Mayo was dead or dying. As Appellant Caballero Fernandez properly emphasizes, not all gunshots are fatal. Moreover, the fact that (1) the shooting occurred late at night; (2) the passenger side window was up; and (3) Appellant Caballero Fernandez was standing a few feet away at the time of the shooting further undercuts the government's argument that Appellant Caballero Fernandez knew that Mayo was dead or dying.

Second, the government's argument that Appellant Caballero Fernandez was "pensive" in the wake of the shooting is insufficient to establish knowledge. Appellee's Br. 14. Such behavior could logically have been reflective of the fact that shots were fired. Whatever the reason, the mere fact that Appellant Caballero Fernandez was pensive does not establish, beyond a reasonable doubt, that he knew that Mayo was dead or dying.

22

Finally, the fact that Appellant Caballero Fernandez was a passenger in a car where police found the murder weapon a month after Mayo was killed is not sufficient to support his conviction. There is no indication that Appellant Caballero Fernandez owned the car in which the gun was found nor is there any evidence that the weapon was actually in his possession. Indeed, there were five other people in the car. Even after drawing all reasonable inferences in favor of the government, we find the evidence insufficient to sustain Caballero Fernandez's conviction for accessory after the fact to murder.[10]

## F.
## Possession with Intent to Distribute

### 1.

Appellant Figueroa-Pineda was convicted of two counts of possession of marijuana with intent to distribute.[11] The facts supporting the first count are as follows: while in pursuit of a fleeing armed robber, police officers went to Appellant Figueroa-Pineda's apartment on January 22, 2008.

---

[10] Appellant Caballero Fernandez also challenges the reasonableness of his sentence. Because we are reversing his conviction for accessory-after-the-fact and remanding for resentencing, we need not consider his sentencing arguments.

[11] Possession with intent to distribute is criminalized by 21 U.S.C. § 841(a)(1), which provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

After discovering that the armed robber had departed, the officers obtained Appellant Figueroa-Pineda's consent to search the apartment.

During that search, police officers uncovered 262 grams of marijuana. They also found baggies and a digital scale. At trial, Officer Chuck Hastings, one of the lead federal agents on this case, testified that 262 grams was "a dealer amount" of marijuana. J.A. 1886. Officer Hastings also testified that he believed Appellant Figueroa-Pineda intended to sell this marijuana. Based on this evidence, the jury found Appellant Figueroa-Pineda guilty of possession with intent to distribute.

Appellant Figueroa-Pineda's second conviction arose after he was arrested in his home on June 24, 2008. In the incident search, officers found 45 grams of marijuana and digital scales. The scales were open with marijuana residue on top. Based on this evidence, the jury convicted Appellant Figueroa-Pineda of a second count of possession with intent to distribute.

Following these convictions, Appellant Figueroa-Pineda filed a motion for judgment of acquittal as to both convictions. These motions were denied and Appellant Figueroa-Pineda appealed.

24

2.

The denial of a motion for judgment of acquittal is reviewed de novo. Hickman, 626 F.3d at 762. When the challenge is based on sufficiency of the evidence, we view the evidence and all reasonable inferences in favor of the government. Penniegraft, 641 F.3d at 571. We will sustain the verdict if any rational fact finder would find the essential elements beyond a reasonable doubt. Higgs, 353 F.3d at 313.

3.

Appellant Figueroa-Pineda argues that the evidence is insufficient to show that he intended to distribute the drugs on either count. In so arguing, he relies exclusively on United States v. Fountain, 993 F.2d 1136 (4th Cir. 1993). In Fountain, the defendant was caught in an area known for drug trafficking with zip-tied baggies and 2.4 grams of marijuana. The district court found this to be sufficient evidence of intent to distribute. Id. at 1139. We reversed, holding that this evidence merely created a "suspicion" of intent to distribute. Id.

Fountain, however, is distinguishable. As to the first count, Fountain does not apply because, in that case, Fountain possessed only 2.4 grams of marijuana. The government's evidence on the first count of conviction showed that Appellant Figueroa-Pineda possessed 262 grams of marijuana.

25

According to Officer Hastings, 262 grams is a "dealer amount" of marijuana. While there is no bright-line rule as to what constitutes a "dealer amount," the significant disparity between the amount here and the amount in Fountain is impossible to ignore.

Second, in Fountain, the only evidence proffered to establish intent to distribute was: (a) the fact that the drugs were in baggies and (b) the fact that Fountain was in a drug-trafficking area. Fountain, 993 F.2d at 1137-39. Here, Appellant Figueroa-Pineda was also found with digital scales. We have held that possession of scales is probative of intent to distribute. United States v. Harris, 31 F.3d 153, 157 (4th Cir. 1994).

As to the second count, the evidence presents a slightly closer call, as it is perhaps plausible that a heavy marijuana user would purchase 45 grams (less than 3 ounces) for personal consumption. However, our task is not to determine whether the jury could have reasonably reached the opposite conclusion. Rather, the relevant question is whether there is sufficient evidence to support the jury's conclusion. There is.

Specifically, during the June 24, 2008 search of Appellant Figueroa-Pineda's apartment, police officers found digital scales with marijuana residue on top of them. As noted above, this is probative of intent to distribute. Harris, 31

26

F.3d at 157.  Moreover, at the time of the second search, Appellant Figueroa-Pineda had been caught with 262 grams of marijuana within the past six months.  These facts provide sufficient support for the jury's finding.

## G.
## Firearm Possession

### 1.

Appellant Figueroa-Pineda was also convicted of possession of a firearm in furtherance of a drug-trafficking offense.  This conviction arose from the initial January 2008 search of Appellant Figueroa-Pineda's apartment mentioned above.  During the search, police officers asked Appellant Figueroa-Pineda whether there were any weapons in the house.  In response, Appellant Figueroa-Pineda directed them to a .22 caliber revolver.  The weapon was hidden under a rug a few feet from the drugs.  Based on this, Appellant Figueroa-Pineda was convicted of possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c).  Appellant Figueroa-Pineda challenged this conviction by filing a motion for judgment of acquittal, which was denied.

### 2.

Again, the denial of a motion for judgment of acquittal is reviewed de novo.  Hickman, 626 F.3d at 762. When the challenge is based on sufficiency of the evidence, we view

27

the evidence and all reasonable inferences in favor of the government. Penniegraft, 641 F.3d at 571. We will sustain the verdict if any rational fact finder would find the essential facts beyond a reasonable doubt. Higgs, 353 F.3d at 313.

3.

On appeal, Appellant Figueroa-Pineda argues that he did not possess the weapon in furtherance of his drug-trafficking offenses. In United States v. Perry, 560 F.3d 246 (4th Cir. 2009), we articulated several non-exclusive factors to aid the determination of whether a firearm was possessed in furtherance of drug trafficking activity: (1) the type of drug activity that was being conducted; (2) the accessibility of the weapon; (3) the type of weapon; (4) whether the weapon was stolen; (5) whether the weapon was possessed illegally; (6) whether the weapon was loaded; (7) the proximity of the drugs or drug profits to the weapon; and (8) the time and circumstances under which the weapon was found. See id. at 254.

As applied in this case, these factors support a finding that Appellant Figueroa-Pineda possessed the gun in furtherance of his drug trafficking offenses. Specifically, the gun was located a few feet from a large quantity of marijuana (Factor #7). Additionally, the gun was a .22 caliber revolver and, therefore, was easily hidden in an accessible place. (Factors #2 and #3). Finally, Detective Hastings testified

28

that, because drug dealers commonly get robbed, they often carry weapons to protect themselves. Accordingly, a reasonable jury could conclude that Appellant Figueroa-Pineda possessed the firearm in furtherance of his drug trafficking activities.[12]

### H.
### Obstruction of Justice

### 1.

When sentencing Appellant Villalobos, the district court applied an obstruction of justice enhancement as defined in § 3C1.1 of the United States Sentencing Guidelines ("U.S.S.G."). This section provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2012). Additionally, Application Note 4(A) to § 3C1.1 provides that this enhancement should apply where a defendant is "threatening, intimidating, or otherwise unlawfully

---

[12] Appellant Figueroa-Pineda argues that the government has failed to exclude the possibility that the weapon belonged to the fleeing armed robber. This argument is of no moment. To be sure, Appellant Figueroa-Pineda's explanation is plausible. However, it does not follow that a reasonable juror must conclude that the gun did not belong to Appellant Figueroa-Pineda. Viewing the evidence in the light most favorable to the government, this argument is inconsequential.

influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so[.]" U.S.S.G. § 3C1.1 cmt. n. 4(A).

At the sentencing hearing, Officer Hastings testified that Appellant Villalobos threatened witness Vela-Garcia during the trial when Appellant Villalobos grabbed his own throat while looking in the direction of Vela-Garcia. Officer Hastings based his testimony on Vela-Garcia's post-trial statements. Specifically, Officer Hastings testified that during a post-trial interview, Vela-Garcia indicated that he believed the gesture made by Appellant Villalobos was designed to make the point to Vela-Garcia that members of the MS-13 gang would kill Vela-Garcia if possible.

Additionally, the district court noted that there had been a general atmosphere of intimidation during the trial and that Vela-Garcia had appeared visibly shaken while testifying. As noted above, MS-13 has a history of visiting violence upon former members who cooperate with government officials. The district court observed that, consistent with this practice, several of the defendants glared at witnesses during trial, ultimately prompting the district court to admonish defendants to cease such behavior. Based on all of this evidence, the district court found that the obstruction of justice enhancement was warranted.

30

## 2.

In order to apply the obstruction of justice enhancement, a sentencing court must find, by a preponderance of the evidence, that the defendant "'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice . . . .'" United States v. Kiulin, 360 F.3d 456, 460 (4th Cir. 2004) (quoting United States v. Puckett, 61 F.3d 1092, 1095 (4th Cir. 1995)). We review factual findings made by a district court in applying the Sentencing Guidelines, including those facts that serve as a basis for an obstruction of justice enhancement, for clear error. Id.

## 3.

Appellant Villalobos argues that the district court clearly erred in concluding that he threatened Vela Garcia. Specifically, Appellant Villalobos argues that the district court improperly relied on the statements of Detective Hastings because doing so deprived Appellant Villalobos of the opportunity to confront his accuser, Vela-Garcia. Additionally, Appellant Villalobos argues that the district court should not have relied on its own observations of the general atmosphere at

trial as such atmosphere was not entirely attributable to Appellant Villalobos. We disagree.[13]

As the government points out, during sentencing a district court may properly consider "any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." Powell, 650 F.3d at 392 (quoting United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010)). Here, the district court relied on the statement of a cooperating witness as relayed by a police officer. Additionally, the district court relied on its own first-hand impressions of the atmosphere at trial, including its impression of Vela-Garcia's demeanor while testifying. Taken together, these facts corroborate Vela-Garcia's testimony that he was threatened. Accordingly, the district court did not clearly err in concluding that Appellant Villalobos threatened Vela Garcia and, therefore, the district court did not err in applying the enhancement here.

---

[13] Appellant Villalobos also argues that reliance on Vela-Garcia's post-trial interview violates the Due Process Clause and the Confrontation Clause because Vela-Garcia was not subject to cross examination during that interview. However, these claims fail because a criminal defendant does not enjoy a constitutional right to cross examination at sentencing. See U.S. v. Powell, 650 F.3d 388, 393 (4th Cir.), cert denied, 132 S.Ct. 350 (2011).

III.

For the forgoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED. Specifically, the conspiracy to commit racketeering conviction is AFFIRMED as to each Appellant. Appellant Caballero Fernandez's conviction as an accessory-after-the-fact is REVERSED and his case REMANDED to the district court for resentencing. Appellant Figueroa-Pineda's convictions for possession of marijuana with intent to distribute (two counts) and for possession of a firearm in furtherance of a drug trafficking offense are AFFIRMED. Finally, the district court's application of an obstruction of justice enhancement as to Appellant Villalobos is AFFIRMED.

No. 11-4284 <u>AFFIRMED IN PART,</u> <u>REVERSED IN PART, AND REMANDED</u>; No. 11-4300, No. 11-4319, No. 11-4320, No. 11-4418, and No. 11-4458 <u>AFFIRMED</u>

33

TRAXLER, Chief Judge, concurring in part and dissenting in part:

Viewing the evidence in the light most favorable to the government, and drawing all inferences in its favor, as we must, see United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011), I would affirm Caballero Fernandez's conviction for accessory-after-the-fact to murder.

Fernandez-Gradis, with Caballero Fernandez close at his side, stood next to the passenger door of Ruben Ibarra's vehicle -- close enough for Fernandez-Gradis to knock on the passenger-side window with gun in hand. He then shot twice at point blank range at the passenger, shattering the glass from the window and hitting the victim once in the chest. In my view, this evidence would permit a jury to reasonably infer that both Fernandez-Gradis and Caballero Fernandez were close enough to see that the passenger had been shot in the chest. From a gunshot wound to the chest stems the logical and reasonable conclusion that the victim was dying.

Accordingly, I respectfully dissent from the reversal of Caballero Fernandez's conviction for accessory-after-the-fact to the murder of Ulysses Mayo. I concur in the remainder of the majority opinion.

34