COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


DAVID JASON O'CONNELL

                                                    OPINION BY
v.        Record No. 1010-05-2              JUDGE RANDOLPH A. BEALES
                                               SEPTEMBER 12, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Michael Morchower (Sherry Netherland, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


In a bench trial, David Jason O'Connell (appellant) was found guilty of two counts of

involuntary manslaughter; one count of failing to stop, report information, and render assistance at

the scene of a motor vehicle accident; and one count of driving under the influence (DUI).  On

appeal, appellant contends the evidence was insufficient to sustain his convictions of involuntary

manslaughter and leaving the scene of an accident.[1]  Finding the evidence sufficient to support the

convictions, we affirm.

I.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

[1] This Court denied the portion of appellant's petition for appeal relating to his DUI
conviction.

## II. FACTS

In the late afternoon hours of February 11, 2004, appellant, driving a red Corvette, engaged in a drag race on Robious Road in Chesterfield County with David Moore, who was driving a black Corvette. William Hogan was a passenger in Moore's vehicle. During the race, Moore's vehicle left the roadway and struck a tree. Both Moore and Hogan died from injuries they sustained in the accident. Appellant's vehicle struck a van at the entrance of a residential subdivision, but he and the occupants of the van were largely unharmed.

In the hours preceding the incident, Moore and Hogan encountered appellant, whom they already knew, in a bar in Chesterfield County. The men were all Corvette enthusiasts, and Moore and appellant each owned a Corvette. During a discussion about racing their Corvettes, appellant said, "[W]e can go out and we can race now if you like." Moore declined, indicating he had had too much to drink.

The group went outside to the parking lot, where they examined and compared Moore's and appellant's Corvettes. Appellant and Moore, with Hogan as Moore's passenger, then drove their vehicles to Robious Road, which, in that vicinity, was a four-lane road divided by a median. The road was dry, but snow and sand were present along the sides of the road. The posted speed limit in that area was forty-five miles per hour.

While the Corvettes traveled beside each other at about five miles per hour, occupying both eastbound travel lanes, the occupants communicated for about twenty seconds. Appellant, the driver of the red vehicle, then gave a hand signal, and the vehicles "gunned it" and began to race. Evidence from eyewitnesses and a sensing diagnostic module in appellant's car indicated the vehicles traveled at speeds in excess of 100 miles per hour before losing control and crashing. It was unclear which driver lost control first and what effect the movements of each car had on the other, but the cars did not come in contact with one another. The black Corvette

went into a spin and ran into the trees. Appellant's red Corvette spun around, hit the rear portion of a van that was leaving the Roxshire subdivision, and then hit a brick wall at the subdivision entrance.

Trooper Mark Haygood of the Virginia State Police was operating the van hit by the red Corvette. Haygood was taking his wife, who was pregnant and in labor, from their home in Roxshire to the hospital. After determining that his wife had not been hurt, Haygood exited the van and approached appellant, who was sitting in the driver's seat of the red Corvette. Haygood identified himself as a police officer and used his cellular telephone to dial 911. Although Haygood told appellant to remain where he was, appellant exited the car and used a cellular telephone.

Joe Cravens, a driver who had observed the accident from the westbound side of Robious Road, attempted to render assistance to Moore and Hogan, the occupants of the black Corvette. Moore had a pulse, but Hogan did not. Cravens then encountered Haygood, who gave Cravens his card and said he was taking his wife to the hospital.

As Cravens was rechecking Moore's pulse, he saw appellant begin walking south on Old Gun Road in the direction of a subdivision. Appellant climbed over a fence into the backyard of a residence in the Roxshire subdivision. Appellant proceeded through the backyard of the next house, walked between two houses to Welrose Court, passed by the front of a third house, and walked into the intersection of Auger Lane and Welrose Court. A friend of appellant, Jarrett Turner, lived in one of the houses that he passed on Welrose Court.

Cravens shouted for appellant to stop and ran to catch up with him. Appellant stopped and stared at Cravens for a few seconds. Cravens told appellant, "Don't do it." According to Cravens, appellant replied, "I'm going to make a telephone call."[2]

Cravens pulled out his telephone and offered it to appellant. Appellant accepted the phone and used it, although Cravens did not know whom appellant called. Appellant walked back with Cravens to the area where the red Corvette had collided with the van. When they got to the scene, police officers had arrived.

When Officer Cleon Flowers of the Chesterfield County police reached the scene, he found appellant near his car. Appellant admitted he had been driving the car. Appellant commented, "I'm not going to lie, we were racing." Appellant said he had consumed four or five beers after work. A subsequent breath test indicated appellant's blood alcohol content (BAC) was .11. Appellant said that during the race, the black Corvette had "fishtailed" in front of him. He said that he engaged his brakes to avoid contact, and his car spun out of control.

### III. ANALYSIS

### A. INVOLUNTARY MANSLAUGHTER

Appellant contends the evidence was insufficient to support his convictions of the involuntary manslaughter of Moore and Hogan. We disagree.

> When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Thus, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any*

---

[2] The police later recovered a cell phone from beneath the driver's seat of appellant's Corvette.

- 4 -

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (*en banc*).

To sustain a conviction of involuntary manslaughter under Virginia law, the Commonwealth is required to prove that the defendant:

committed "acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts." Bell v. Commonwealth, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938). The Commonwealth must also prove that [the defendant's] criminally negligent acts were a proximate cause of the victim's death. Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992).

Gallimore v. Commonwealth, 246 Va. 441, 445-46, 436 S.E.2d 421, 424 (1993). Thus, we must determine whether the evidence, viewed in the light most favorable to the Commonwealth, proved that appellant committed criminal negligence that was a proximate cause of the deaths of Moore and Hogan.

## 1. Criminal Negligence

To establish criminal negligence in the context of involuntary manslaughter involving a motor vehicle, the Commonwealth must prove:

that "the conduct of the driver constitutes a great departure from that of a reasonable person (gross, wanton or willful conduct) which creates a great risk of injury to others and where by the application of an objective standard the accused should have realized the risk created by his conduct."

West v. Commonwealth, 43 Va. App. 327, 343, 597 S.E.2d 274, 281 (2004) (quoting Keech v. Commonwealth, 9 Va. App. 272, 280, 386 S.E.2d 813, 817 (1989)).

Appellant admitted to the police that he and Moore had been racing. Any person who engages in a motor vehicle race on Virginia highways is guilty of reckless driving. See Code § 46.2-865. Both appellant and Moore had been drinking alcohol before the race. The race took place at rush hour on a weekday afternoon on a busy road adjacent to a residential community. During the race, the speed of appellant's car exceeded 100 miles per hour. It was winter, and the shoulders of the roads had snow and sand on them. Appellant engaged in the race voluntarily and signaled for the race to begin. Appellant was aware of these circumstances and the reasonably foreseeable inherent danger his actions created. Given all these circumstances, his conduct showed a reckless disregard for the reasonably foreseeable danger to the race participants and others, and constituted criminal negligence.

## 2. Proximate Cause

Appellant also contends the evidence did not prove his negligence was the proximate cause of the deaths of Moore and Hogan. Appellant argues that the evidence proved Moore lost control of his vehicle without making contact with appellant's vehicle. According to appellant, the deaths were attributable solely to the negligence of Moore.

Even assuming Moore's conduct was criminally negligent:

> [t]here can be more than one proximate cause [of an incident] and liability attaches to each person whose negligent act results in the victim's injury or death. Maroulis v. Elliott, 207 Va. 503, 510, 151 S.E.2d 339, 344 (1966). To be an intervening cause . . . [an incident] must have been an event which [the defendant] could not have foreseen. "An intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." Delawder v. Commonwealth, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973). Furthermore, an intervening event, even if a cause of the harm, does not operate to exempt a defendant from liability if the intervening event was put into operation by the defendant's negligent acts. Baxley v. Fischer, 204 Va. 792, 798, 134 S.E.2d 291, 295 (1964).

Gallimore, 246 Va. at 447, 436 S.E.2d at 425.

In Banks v. Commonwealth, 41 Va. App. 539, 549, 586 S.E.2d 876, 880 (2003), we explained:

> "contributory negligence has no place in a case of involuntary manslaughter, [and] if the criminal negligence of the [accused] is found to be the cause of death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not." Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992) (alterations in original) (quoting Bell, 170 Va. at 616, 195 S.E. at 683). "Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. In such case, the conduct of the accused becomes a remote cause." Id. (citation omitted).

Thus, to absolve appellant of liability for the deaths of Moore and Hogan, Moore's negligence must have been an independent and intervening act that alone caused the fatal accident. See also Gallimore, 246 Va. at 442-47, 436 S.E.2d at 422-25 (holding that, if a defendant sets in motion a chain of events that leads to a reasonably foreseeable outcome, and she does nothing to prevent that logical outcome, her actions are the proximate cause of the foreseeable result).

In Delawder v. Commonwealth, 214 Va. 55, 196 S.E.2d 913 (1973), the Court held that, in a motor vehicle race, the possibility of one driver's losing control of his vehicle and crashing, whether or not the second participant's vehicle made contact with the first or interfered with its operation in any way, "should have been foreseen by both drivers in the reckless circumstances under which they were operating their vehicles. An intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." Id. at 58, 196 S.E.2d at 915. Under the law of this case, a driver's losing control and crashing is a "reasonably foreseeable" result of a drag race.

Other than the Supreme Court's decision in Delawder, no reported Virginia appellate decision has considered a defendant's criminal responsibility for a death occurring during the defendant's participation in a motor vehicle race. Appellant cites a number of out-of-state

decisions finding that a driver in a drag race could not, merely by virtue of his participation in the event, be held criminally liable for the death of a co-participant in the race. See, e.g., Velazquez v. State, 561 So. 2d 347, 353 (Fla. Dist. Ct. App. 1990) (finding a victim's death was caused by his own conduct, not the defendant's participation in the race); Thacker v. State, 117 S.E.2d 913, 915 (Ga. Ct. App. 1961) (finding a victim's loss of control of vehicle was the independent cause of his death); State v. Petersen, 526 P.2d 1008, 1009 (Or. 1974) (holding the defendant was not responsible for the death of the victim, a "knowing and voluntary participant" in the race as a passenger in the competitor's vehicle); Commonwealth v. Root, 170 A.2d 310, 311 (Pa. 1961) (rejecting the application of "the tort law concept of 'proximate cause' in fixing responsibility for criminal homicide").

By contrast, a number of state courts reject a contributory negligence theory and impose upon a race participant criminal liability for a death resulting from a race. For instance, in State v. Farner, 66 S.W.3d 188, 192 (Tenn. 2001), John Farner and Landon Baker engaged in a drag race that ended when Baker lost control of his vehicle and collided with two other cars. Baker and his passenger were killed as a result. Farner's vehicle was not physically involved in the collision. The Supreme Court of Tennessee found that under the law of that state:

> a victim's contributory negligence does not relieve a defendant of criminal liability for his or her own criminally negligent conduct. However, a victim's contributory negligence may be considered in determining whether, under the circumstances, the defendant's criminally negligent conduct was a proximate cause of death, or whether the victim's conduct was an independent, intervening cause of death.

Id. at 203 (citations omitted).

Similarly, in People v. Hart, 778 N.Y.S.2d 94 (N.Y. App. Div. 2004), Hart was convicted of two counts of manslaughter for the deaths of Michael Vasipolli, who was the co-participant in a race, and the driver of a vehicle struck by Vasipolli. No evidence suggested any contact

between the vehicles in the race. No evidence suggested that Hart forced Vasipolli into oncoming traffic during the race. The court sustained the convictions, noting the jury could have concluded from the evidence that:

> the defendant instigated the drag race. Witnesses testified that the participants drove at high speeds and were weaving in and out of the traffic lanes around slower-moving vehicles on a suburban street in the middle of the afternoon. . . .
>
> The People therefore presented evidence sufficient to prove beyond a reasonable doubt that the defendant, by his reckless conduct, set in motion the events which ultimately caused Vasipolli's death and that an accident under these circumstances should have been reasonably foreseen. Even absent evidence that there was direct contact between [the defendant's and Vasipolli's vehicles] . . . or that the defendant forced [Vasipolli's car] into oncoming traffic, the People established that the defendant's conduct "forged a link in the chain of causes which actually brought about [Vasipolli's] death." People v. Stewart, [358 N.E.2d 487, 491 (N.Y. 1976)] . . . .

Id. at 95. Furthermore, the court said, "since the defendant's actions need not be the sole cause of death, the fact that Vasipolli's own reckless actions contributed to his death does not absolve the defendant of liability." Id.

In Goldring v. State, 654 A.2d 939 (Md. Ct. Spec. App. 1995), the court found that a defendant's decision to compete in a drag race constituted gross negligence and caused the ensuing deaths, even though defendant's vehicle did not collide with that of the co-participant in the race. As the court stated in Goldring, "it was the[] treacherous conditions, under which [both participants] . . . agreed to race, that foreordained the fatal results that followed." Id. at 944.

We agree with the Farner court's conclusion that the better-reasoned cases reject the notion that "negligence of a victim co-participant in a drag race is a complete defense if the victim's negligent conduct is a proximate cause of the victim's death." Farner, 66 S.W.3d at 200-01. The Farner court's conclusion is consistent with Virginia case law regarding independent and intervening causes of a fatal accident. See Gallimore, 246 Va. at 447-48, 436

- 9 -

S.E.2d at 425-26; <u>Delawder</u>, 214 Va. at 58, 196 S.E.2d at 915; <u>Banks</u>, 41 Va. App. at 549, 586 S.E.2d at 880.

Thus, we must determine, considering all the circumstances viewed in the light most favorable to the Commonwealth, whether a rational factfinder could have found beyond a reasonable doubt that the evidence proved that appellant's criminal negligence was a proximate cause of the deaths of Moore and Hogan, notwithstanding any concurrent negligence by Moore. The Commonwealth proved that while the men were in the bar, appellant issued the challenge for Moore to race him. Although Moore initially declined the invitation, Moore and appellant together drove their Corvettes from the parking lot to Robious Road. Both appellant and Moore had been drinking. The road still had some snow and sand on its shoulder. After some discussion between the vehicles, appellant gave the signal for the race to begin. The vehicles reached speeds of over 100 miles per hour. As the vehicles raced, each lost control. Moore's black Corvette left the roadway and struck a tree.

Given this evidence, an average person should or would have foreseen the inherent risk that a driver could lose control during the race, posing a danger of serious injury to himself and others. Appellant set this course of events in motion and did nothing to prevent such a risk. Thus, any negligence Moore may have committed was not an independent, intervening cause of the accident in which he and Hogan were killed. Because appellant's criminal negligence was a proximate cause of the deaths of Moore and Hogan, we must affirm appellant's convictions for involuntary manslaughter.

### B. FAILING TO STOP AT THE SCENE OF AN ACCIDENT

Appellant also argues the evidence did not prove he violated Code § 46.2-894 by failing to stop, report information, and render assistance at the scene of a motor vehicle accident. In pertinent part, Code § 46.2-894 provides:

The driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, . . . *and* report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property. The driver *shall also* render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

(Emphasis added.) "'It is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense.'" Tooke v. Commonwealth, 47 Va. App. 759, 765-66, 627 S.E.2d 533, 536 (2006) (quoting James v. Commonwealth, 178 Va. 28, 37, 16 S.E.2d 294, 300 (1941)). "The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action; — that is, to stop and give the aid and information specified." Herchenbach v. Commonwealth, 185 Va. 217, 220, 38 S.E.2d 328, 329 (1946) (examining a substantially similar predecessor to Code § 46.2-894).

Appellant contends the Commonwealth did not prove he left the scene failing to provide the information required by the statute and failing to render reasonable assistance to the victims. He relies on Smith v. Commonwealth, 218 Va. 927, 243 S.E.2d 463 (1978), to argue that the Commonwealth must affirmatively prove he did not provide his information to authorities and he did not render assistance. However, because Code § 46.2-894 requires that he must satisfy each duty noted in this statute, as it is written in the conjunctive, the Commonwealth can establish appellant's guilt by proving appellant failed to perform any one of the duties under the statute. See Varga v. Commonwealth, 260 Va. 547, 551-52, 536 S.E.2d 711, 714 (2000) (explaining that

all conditions must be satisfied in order to comply with a statute that uses the conjunctive word, "and").

Smith stands for the proposition that the Commonwealth must prove the elements of a crime beyond a reasonable doubt, excluding "every *reasonable* hypothesis of innocence." 218 Va. at 930, 243 S.E.2d at 464 (emphasis added). In that case, Smith was seen going to the front of the funeral home after he ran into the building with his car and before he left the scene. Id. at 928-29, 243 S.E.2d at 464. The Commonwealth did not present any evidence on whether anyone connected to the funeral home was there at the time. The Supreme Court found the Commonwealth had not excluded the reasonable hypothesis, based on the Commonwealth's evidence of his actions after the accident, that Smith tried to leave his information with the custodian of the building, but he could not find anyone, or that the note that perhaps he left blew away. Id. at 929-30, 243 S.E.2d at 464.

Here, the Commonwealth presented sufficient evidence to prove that appellant did not comply with the requirements of Code § 46.2-894. The evidence proved appellant lost control of his vehicle during the race with Moore, who ran into a tree. Appellant's Corvette struck a van operated by Trooper Haygood and then a brick wall. Haygood immediately got out of his vehicle. Haygood testified that appellant began using a cellular telephone immediately after the accident.

Another motorist, Joe Cravens, proceeded to the Roxshire entrance, after checking on the condition of Moore and Hogan, and encountered Haygood, who had told appellant to stay where he was. Cravens returned to the black Corvette to attempt to assist Moore and Hogan. While he was doing so, Cravens observed appellant remove a grocery bag from the red Corvette and hide it in the bushes. Appellant then *climbed a fence* and walked away from the accident scene, moving through backyards and between houses as he did so. Cravens ran after appellant into the

subdivision. When Cravens caught up with appellant, he said, "Don't do it." Only after this pursuit and exhortation by Cravens to stop did appellant return to the accident scene. When appellant and Cravens got back to the accident scene, the police had arrived.

The trier of fact rejected appellant's claim that he left the accident scene to make a telephone call and report the accident. Appellant clearly had access to a telephone at the scene, as both Cravens and Haygood saw appellant using a telephone near his vehicle. The phone later was found in appellant's car under the driver's seat. Appellant had no reason to head towards a friend's home to make a telephone call. If he had been seeking a telephone, it would have been logical for him to stop at the first house he reached rather than making his way behind and between houses, as if to avoid detection. That appellant headed in the direction of his friend Turner's home supports a conclusion that appellant left the scene attempting to flee, not to report the accident. Also supporting this conclusion is the fact that appellant *had already passed Turner's house* - and yet another house - and was in the street before Cravens finally caught up to him. Of course, appellant could also have provided his information directly to Haygood before Haygood left the scene.

In Smith, the defendant did not have a phone in his hand at the scene and then testified that he left the scene to contact the police. The Commonwealth's evidence proved Smith had acted in a manner consistent with the mandates of the statute, and nothing suggested that he had not attempted to leave the information. Here, as Cravens testified, appellant essentially admitted he had not provided the information to the appropriate person(s) – he told Cravens he was going to make a call at a friend's home. The trial court acting as the trier of fact did not believe this,

- 13 -

given the testimony that appellant had the opportunity to give this information to Haygood and the fact that he had a telephone in his hand at the scene.[3]

Not only did appellant leave the scene of the accident without making a proper report to the police, appellant made no attempt to render assistance to anyone injured in the accident. While appellant probably could tell that Haygood was not seriously injured, he never asked about anyone else inside Haygood's vehicle. Most significantly, appellant, who must have known Moore and Hogan had been seriously injured or lay dying having struck the tree at a high rate of speed, never approached the black Corvette where Moore indeed lay dying. Instead, he walked in the opposite direction of the black Corvette and the tree. None of the witnesses at the scene testified appellant went over to the black Corvette or even asked about his friends. He was in the sight of either Haygood or Cravens the entire time. Appellant made absolutely no effort to check on the condition of his friends, with whom he had been talking and then drag racing only moments earlier.

As an appellate court, we do not review this evidence *de novo*, but with the understanding that the trial court is due considerable deference in its role as the trier of fact. Indeed, when considering the sufficiency of the evidence to support a criminal conviction, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 662-63, 588 S.E.2d 384, 386-87 (2003)). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447

---

[3] Although appellant argued that Trooper Haygood told him to stay where he was, appellant then quickly disobeyed Haygood's instructions. Therefore, appellant certainly cannot argue that he did not render aid or provide information because he was following Haygood's instruction to stay put.

(quoting <u>Jackson</u>, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. <u>Wactor</u>, 38 Va. App. at 380, 564 S.E.2d at 162. Applying this standard of review to the evidence presented at trial, we conclude that a rational trier of fact could certainly have found beyond a reasonable doubt that appellant failed to comply with the requirements of Code § 46.2-894.

## IV.

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>