COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Decker and AtLee
Argued by teleconference


DEREK JUSTICE DOGGETT

                                                        OPINION BY
v.        Record No. 0548-15-2                JUDGE RANDOLPH A. BEALES
                                                        APRIL 12, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Gregory R. Sheldon (Bain Sheldon, PLC, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Derek Justice Doggett (appellant) was convicted in a bench trial in the Circuit Court of

Chesterfield County of felony racing in violation of Code § 46.2-865.1. On appeal to this Court,

appellant argues that the trial court "erred by finding that the Commonwealth had proven that a race

occurred"; erred by finding that appellant's "failure to allow the other vehicle to pass him

constituted behavior so gross, wanton or culpable so as to show a disregard for human life"; and

erred "by finding that [appellant] caused the accident." Finding that the circuit court did not err, we

affirm appellant's conviction for felony racing.[1]

I.  BACKGROUND

Applying the established standard of review on appeal, we consider the evidence at trial "in

the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the

---

[1] On appeal, appellant does not challenge his misdemeanor convictions for driving on a
suspended license and failure to appear in court.

trial court. <u>Beasley v. Commonwealth</u>, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting <u>Riner v. Commonwealth</u>, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

On the night of December 29, 2013, appellant, Rosalee Hill (Hill), Kristopher Holiday (Holiday), and Johnny Sam (Sam) went bowling. They finished bowling around 10:45 p.m. as Hill had a curfew at 11:00 p.m. Appellant, Holiday, and Hill got into appellant's car, and Sam got into another car. Holiday sat in appellant's front passenger seat, and Hill sat in the back seat of appellant's vehicle. Holiday testified that there was no discussion of racing before they got in the two cars. However, he stated that, once they were driving on the road, while both cars were stopped side-by-side waiting at a stoplight, Holiday observed that Sam made a motion with his hand. When the stoplight turned green, both cars "took off at the light" – each in their separate lanes. The road then turned into one lane at some point on that road, and, at this point, Sam was ahead of appellant, and they slowed to the speed limit.

About a mile past the traffic light, appellant passed Sam's vehicle by crossing over a double-yellow line. Holiday testified that appellant did not have trouble passing Sam and that he was unsure how fast appellant's vehicle was driving at that time, but that he passed going very quickly. Holiday testified that he was not afraid of appellant's speed at that point. Next, however, Sam attempted to pass appellant by going over a double-yellow line and into the other lane, and both vehicles sped up. Holiday testified that he told appellant, "'Hey, man. We're going too fast.' And then I looked back and seen Johnny's lights and I heard like a screeching sound kind of, and I seen Johnny's lights coming towards our car, and then like two seconds after that, everything just went black, kind of, until we started rolling." Holiday testified that appellant was going between 55 and 60 miles per hour at the time of the crash but that, when he told appellant they were going too fast, appellant took his foot off the accelerator and the crash then happened very soon thereafter. While Holiday suffered only a broken hand, Hill was ejected from the car upon impact. She

suffered a traumatic brain injury, a fractured pelvis, a significant injury to her right eye, and a broken jaw as a result of the accident, all of which required a six-month stay in the hospital.

In the place that the accident occurred, the road was one lane going each way, and had a speed limit of 35 miles per hour. The evidence at trial showed that appellant was travelling at 55 to 60 miles per hour – more than 20 miles per hour over the speed limit – and on roads that were "heavily soaked." Officer Wayne Brumbaugh, the police officer who responded to the scene, testified that, based on his examination of the paint transfer on the vehicles, the two vehicles struck each other twice. Officer Brumbaugh further concluded that the paint transfer suggested that Sam's car was in the wrong lane at the time the accident occurred. Appellant told Officer Brumbaugh that he had been going approximately 35 to 40 miles per hour. He was driving on a suspended license at the time.

The trial court first determined that it was relying on the plain interpretation of the word "race" as a contest of speed. The trial court said, "I agree it takes two or more people, as the statute implies. . . . [W]hen you race, you try to be first." The trial court found certain facts to be significant: (1) the drivers knew each other; (2) when the two cars were stopped next to each other at the stoplight, Sam made a "forward sort of shaking gesture" that the trial court said "could be construed as a gesture meaning go or go forward"; (3) there was excessive speed around the time of the accident (traveling at least 20 miles per hour over the speed limit); and (4) the two drivers maneuvered their cars as they passed or tried to pass each other across a double-yellow line on the road. The trial court focused on the vehicles' maneuvers because it found that Sam was initially the leading car, then appellant passed Sam over a double-yellow line, and finally, when Sam attempted to pass appellant to regain the lead position on a dark, wet, one-lane road, appellant sped up to the point that his passenger, Holiday, said that he felt they were going too fast. Furthermore, in addition to appellant's participation in the race and conduct in maneuvering, the trial court found that

"contact is caused by the fact that the defendant hasn't yielded, hasn't fallen back to let the overtaking vehicle get back in the safe lane of travel." Ultimately, the court found that the evidence was sufficient to prove that appellant was guilty of felony racing.

## II. ANALYSIS

### A. Standard of Review

When reviewing issues of statutory interpretation on appeal, the appellate court reviews the lower court's interpretation *de novo*. Commonwealth v. Barker, 275 Va. 529, 535, 659 S.E.2d 502, 504 (2008). However, when reviewing the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)); see also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. Trial Court's Finding That a Race Occurred

When determining whether the evidence is sufficient to support the circuit court's conclusion that a "race" occurred under Code § 46.2-865.1, we must define "race" within the meaning of the statute. Code § 46.2-865.1(A) states in relevant part:

> Any person who, while engaging in a race in violation of § 46.2-865[2] in a manner so gross, wanton and culpable as to show a reckless disregard for human life . . . [c]auses serious bodily injury to another person who is not involved in the violation of § 46.2-865 is guilty of a Class 6 felony.

(Footnote added). The trial court found that a "race" is a "contest of speed" – and also a competition for first place. The statute does not define the term "race" – perhaps because the General Assembly felt the public and the courts would give it its plain, common-sense meaning. "We construe statutes to 'ascertain and give effect to the intention of the General Assembly. Because the General Assembly's intent 'is usually self-evident from the statutory language,' we apply the plain meaning of the words used in the statute." Farhoumand v. Commonwealth, 288 Va. 338, 343, 764 S.E.2d 95, 98 (2014) (quoting Rutter v. Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 9, 710 S.E.2d 460, 462 (2011)). The American Heritage Dictionary defines "race" as "a competition of speed, as in running or riding." The American Heritage Dictionary 1020 (2d college ed. 1991). Webster's II New College Dictionary also defines "race" as a "competition of speed." Webster's II New College Dictionary 933 (3d ed. 2005).

Based on the plain meaning of a "race" being a contest of speed between two or more motor vehicles, the trial court certainly did not abuse its discretion in determining that a race took place. The trial court noted that the drivers knew each other, that Sam made a forward motion when their two vehicles were stopped next to each other at the stoplight, that appellant's vehicle was traveling at a high rate of speed at the time of the accident, and that both vehicles "made maneuvers" in order to get in front of the other car, even when the road narrowed down to one lane of traffic in their direction and that lane was bounded by a double-yellow line. In short, there was plenty of evidence to support the trial court's conclusion that a "race" occurred.

---

[2] Code § 46.2-865 states (in relevant part): "Any person who engages in a race between two or more motor vehicles on the highways in the Commonwealth . . . shall be guilty of reckless driving."

C.  Appellant's Failure to Allow Sam to Pass Appellant's Vehicle

Appellant argues on appeal that the trial court "erred by finding that Doggett's failure to allow the other vehicle to pass him constituted behavior so gross, wanton or culpable so as to show a disregard for human life."  The Commonwealth must actually prove that a defendant acted in a manner "so gross, wanton *and* culpable as to show a *reckless* disregard for human life."  Code § 46.2-865.1 (emphasis added).  Virginia courts apply an objective test of awareness when determining whether a defendant acted with such criminal negligence.[3]  See Keech v. Commonwealth, 9 Va. App. 272, 281, 386 S.E.2d 813, 818 (1989).  Therefore, appellant must have had an actual or constructive consciousness of the danger involved in his act or omission.  Id. at 280-81, 386 S.E.2d at 818.

In this case, appellant knew (or certainly should have known) that the roads were wet, that the speed limit was 35 miles per hour, that there was almost no shoulder on the road, that driving fast by itself in those conditions would be quite dangerous, and that racing another vehicle would create a dangerous situation that likely would lead to injury, especially when the drivers are attempting to pass each other in the lane for oncoming traffic.  Consequently, the trial court did not err by finding that appellant's failure to allow the other vehicle to pass him (and even speeding up when Sam attempted to pass), while engaged in a race in violation of Code § 46.2-865, was behavior so gross, wanton, and culpable so as to show a reckless disregard for human life.

D.  No Trial Court Error in Finding That Appellant Caused the Accident

The trial court found that appellant caused the accident when he would not allow Sam to pass him in the conditions under which this race occurred.  Appellant argues that he did not cause the accident because he did not leave his lane of travel or cause the contact with Sam's vehicle –

---

[3] While Virginia appellate courts have not yet considered the criminal negligence element in this statute, we note that the same criminal negligence language has been interpreted in involuntary manslaughter cases within the Commonwealth, and those cases provide a persuasive legal analysis for this case.  See, e.g., Keech v. Commonwealth, 9 Va. App. 272, 386 S.E.2d 813 (1989).

and that there is no evidence that, but for appellant's actions of briefly speeding up, the accident would not have occurred. He also claims that no evidence was presented to demonstrate why Sam lost control of the vehicle and that, therefore, no rational trier of fact could conclude that, but for appellant speeding up briefly, the accident would not have occurred. The Commonwealth counters by arguing that appellant's actions did proximately cause Hill's serious bodily injury. The Commonwealth also argues that the other driver's concurrent negligence is not an intervening cause under the facts of this case.

The language of Code § 46.2-865.1 is consistent with the principle of proximate causation. See Code § 46.2-865.1. In O'Connell v. Commonwealth, 48 Va. App. 719, 634 S.E.2d 379 (2006), this Court concluded that negligence on the part of a co-participant in a drag race is not a complete defense for the defendant if the defendant's negligent conduct is a proximate cause of the victim's death. Id. at 729, 731-32, 634 S.E.2d at 384, 385. O'Connell was at a bar when he challenged another man to a drag race with their vehicles. Id. at 723, 634 S.E.2d at 381. Despite the fact that the other man initially declined, both men got into their vehicles (the other man also had a passenger in his car), O'Connell gave the signal for the race to begin, and both vehicles reached speeds of over 100 miles per hour. Id. at 724, 634 S.E.2d at 381. Each driver lost control of his own vehicle independently of the other, and both cars crashed without touching the other car. Id. The other driver and the other driver's passenger died. Id. at 723-24, 634 S.E.2d at 381. This Court found that, despite the other driver's negligence in racing as well and in losing control of his own car, O'Connell's criminal negligence was a proximate cause of the deaths of two individuals because:

> Given this evidence, an average person should or would have foreseen the inherent risk that a driver could lose control during the race, posing a danger of serious injury to himself and others. [O'Connell] set this course of events in motion and did nothing to prevent such a risk. Thus, any negligence [the other driver] may have committed was not an independent, intervening cause of the accident.

Id. at 732, 634 S.E.2d at 385. While the facts in this case are somewhat different (for example, Sam gave the apparent signal to start the race), the main holding of O'Connell also applies here. Appellant's act of racing is a proximate cause of Hill's severe injuries. Sam's negligence in hitting appellant's car does not mean that Sam's negligence was an intervening cause because appellant was already engaged in racing, had passed Sam, and then sped up to prevent Sam from passing him when Sam was in the lane of oncoming traffic maneuvering to pass appellant. Sam's racing does not absolve appellant from his own voluntary participation in the race and in extremely dangerous behavior for appellant's passengers and for other cars on the road as well. In O'Connell, this Court found O'Connell to be guilty, even though O'Connell's car did not touch the co-participant's car. While, unlike here, O'Connell was the one who set the chain of events in motion by asking to race, the co-participant's failure to maintain control under the facts of that case, like in this case, was a completely foreseeable event.

In this case, appellant's acts of racing in a manner so gross, wanton, and culpable as to show a reckless disregard for human life caused Hill's injuries. A rational trier of fact surely could have concluded that, if appellant had not raced and had not attempted to keep Sam from passing him, Hill would not be injured. The fact that Sam was driving the car that ultimately hit appellant's car before both cars went off the road was not an intervening cause such that it would break the chain of causal connection.

Appellant also argues, "It cannot be said that but for Doggett speeding up briefly, the accident would not have occurred." However, this argument blithely ignores the fact that, before that moment when appellant sped up, appellant and Sam were already engaged in a race. Because both parties were already engaged in a race, both parties' course of conduct (the cars passed one

- 8 -

another for the lead position) caused the accident.  Consequently, the trial court did not abuse its discretion when it determined that appellant was the cause of Hill's foreseeable injuries.

For all of these reasons, we will not disturb appellant's conviction for felony racing.

### III.  CONCLUSION

In summary, we hold that, after applying the plain meaning of the word "race," the evidence was sufficient to support a finding that appellant was racing.  Furthermore, the evidence was sufficient for a rational factfinder to conclude that appellant acted in a manner so gross, wanton, and culpable as to show a reckless disregard for human life – and that those actions caused serious bodily injury to Hill.  Consequently, we affirm the circuit court's conviction of appellant for felony racing.

<u>Affirmed.</u>