COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia


CHEZMIN BRITTANY SUTER

                                                               OPINION BY
v.        Record No. 1937-15-1                        JUDGE ROBERT J. HUMPHREYS
                                                               FEBRUARY 21, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Melissa I. Bray, Assistant Public Defender, for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Chezmin Brittany Suter ("Suter") appeals the November 10, 2015 decision by the Circuit

Court of the City of Virginia Beach (the "trial court") convicting her of one count of accessory

after the fact to murder, in violation of Code § 18.2-19.[1]  Suter's single assignment of error is

that the trial court erred in holding that the evidence was sufficient to find Suter guilty of

accessory after the fact to a homicide because the evidence did not establish that Suter was aware

that a homicide had taken place.

---

[1] The trial court also convicted Suter of one count of obstruction of justice, in violation of
Code § 18.2-460(D), and one count of driving without an operator's license, in violation of Code
§ 46.2-300.  Suter did not challenge her conviction for driving without an operator's license, and
this Court denied her appeal as to the charge of obstruction of justice in its June 2, 2016 per
curiam order.  The trial court sentenced Suter to eighteen months with twelve months suspended
on those charges.  Further, the trial court struck a charge against Suter of one count of attempted
assault and battery.

## I. Background

At 9:35 p.m. on May 21, 2014, Suter, her cousin, Andrew Roberts ("Roberts"), and a third woman arrived at the Tropical Delights restaurant ("Tropical Delights") in the City of Virginia Beach. The trio arrived in Suter's green BMW sedan and parked in front of Tropical Delights.

Upon entering Tropical Delights, Suter, Roberts, and their compatriot passed Tyrone Martin ("Martin"), a security employee of Tropical Delights, who sat at the restaurant's entrance near a cash register. Shortly thereafter, another Tropical Delights employee asked Martin to approach Suter and ask for her identification in order to ensure that Suter was of the legal age to be served alcohol. Because she did not present her identification when requested, Martin asked Suter to leave. Suter walked to the entrance, but refused to exit.

Martin and Suter had a verbal confrontation and within a couple of minutes Suter exited through Tropical Delights' front door and sat in her green BMW. Approximately one minute later, Martin came outside and the two exchanged words once again. At Suter's trial, William Harper ("Harper"), a Tropical Delights patron who had stepped outside the restaurant moments before Suter and Martin came outside, testified that Suter and Martin were arguing back and forth when Martin turned and walked away from Suter stating, "I don't have to put up with that." Then, Suter spat at Martin. During his trial testimony, Harper identified the defendant, Suter, to be the same woman that spat at Martin outside of Tropical Delights on May 21, 2014.

After re-entering Tropical Delights, Martin returned to his seat by the entrance. Seconds later, Suter barged back into Tropical Delights and yelled to Roberts, who was at the restaurant's bar, that it was time to go. While waiting for Roberts, Suter reengaged in her verbal quarrel with Martin.

At the entrance door, Roberts physically restrained Suter and forced her to exit. Once outside, Suter told Roberts that Martin had spat at her. Roberts turned to immediately confront Martin who stood in the doorway. At this point, two other Tropical Delights employees stood in front of Martin—the three employees made a triangular formation in the doorway. Suter testified that in response to Roberts' inquiry of whether Martin had spat on Suter, Martin stated, "Yeah, I spit on that little B." Instantly, Roberts pulled a gun from his right hip, and fired two shots directly at Martin striking him in the abdomen and right thigh. A security video captured the entire event.

During this altercation between Roberts and Martin, Suter stood behind and to the right of Roberts. Suter's view was unobstructed. After shooting in the direction of Martin, Roberts fled to Suter's BMW. Suter rushed to the driver's seat of the BMW and drove herself, Roberts, and the other woman to the back of Tropical Delights. Roberts and the other woman exited Suter's BMW and fled the scene.[2] Suter drove away.

Meanwhile, Martin had stumbled back into Tropical Delights and laid on the floor by the cash register holding his abdomen. Two days later, on May 23, 2014, Martin died as a result of the gunshot wounds.[3]

On July 20, 2015, a grand jury indicted Suter on the following charges: one count of accessory after the fact, in violation of Code § 18.2-19; one count of attempt to assault and batter Martin, in violation of Code § 18.2-57; one count of obstruction of justice, in violation of Code § 18.2-460(D); and one count of driving without an operator's license, in violation of Code § 46.2-300.

_____

[2] Roberts was arrested five months later in Georgia.

[3] On May 24, 2014, Martin's autopsy was performed at the medical examiner's office in Norfolk. The medical examiner determined that Martin's cause of death was due to a gunshot wound to the abdomen and a gunshot wound to the right thigh.

On September 23, 2015, Suter was tried in a bench trial. At Suter's trial, Detective Marsolais ("Marsolais") of the Virginia Beach Police Department's homicide unit testified that he made contact with Suter on May 23, 2014. Marsolais had identified Suter as being at the scene of the May 21, 2014 Tropical Delights homicide because the license plate on the green BMW seen in the surveillance video was registered in her name. When first asked about the night of May 21, 2014, Suter told Marsolais that she had come to the area from Maryland, had stayed the night with a friend, and that she had not been at a bar. When asked about the green BMW, Suter said that it was her car but that her uncle had taken the vehicle away two to three months prior. Suter told Marsolais that she knew Roberts, however she supplied Marsolais with a telephone number that turned out to be "a bad number" when Marsolais later attempted to contact Roberts. At Suter's trial, Marsolais identified Suter as the woman in Tropical Delight's surveillance video taken on the night of May 21, 2014 at 21:35:28. Additionally, while the video was being shown to the trial court, Marsolais testified that Suter got into the driver side of the green BMW and drove away directly after Roberts fired gunshots at Martin.

After the Commonwealth completed its case-in-chief, Suter moved to strike the evidence with respect to all charges against her. The trial court denied her motion to strike except for the charge of attempted assault and battery which the court dismissed.

Testifying in her own defense, Suter claimed to have never seen the gun that night. She stated that she ran to her car because she was afraid and, due to her fear, she drove behind Tropical Delights and let Roberts out of the car. Finally, on direct, Suter responded in the negative as to whether she saw if anybody had been hit by the bullets. On cross-examination, Suter admitted that she was the person in the video and was aware that shots were fired, but that she was not looking at it and did not see Martin get shot.

After viewing the video, the trial court found that Suter was "looking directly at the gun" and Roberts at the moment Roberts fired shots at Martin, that she was present at the scene, and that she drove the getaway car after clearly observing Roberts shoot Martin. Pointedly, the trial court stated, "Except for the shooter and the victim, [Suter] might have had the best view of anyone there. And to say that she didn't see it is incredible and I can't accept that testimony." The trial court found Suter guilty of the Class 6 felony count of accessory after the fact for a Class 1 or 2 felony, in violation of Code § 18.2-19, the misdemeanor count of obstruction of justice, in violation of Code § 18.2-460(D), and the misdemeanor count of driving without an operator's license, in violation of Code § 46.2-300.

On November 10, 2015, the trial court sentenced Suter to five years of imprisonment, with three years suspended for the accessory after the fact conviction. Additionally, the trial court sentenced Suter to twelve months' imprisonment with four months suspended for her obstruction of justice conviction and to a term of six months of imprisonment with two months suspended for her driving without an operator's license conviction.

## II. Analysis

### A. Standard of Review

On appeal, the only assignment of error presently before us is the sufficiency of the evidence to support Suter's conviction for accessory after the fact to a homicide that is punishable as a Class 1 or Class 2 felony. In analyzing this assignment of error, this Court views the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court, and we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Doggett v. Commonwealth, 66 Va. App. 219, 224-25, 783 S.E.2d 555, 558 (2016) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003)). "This familiar standard

gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. at 225, 783 S.E.2d at 558 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

"If the evidence is sufficient to support the conviction, the reviewing court [will not] substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013). Additionally, "when the sufficiency of the evidence is attacked on appeal, the judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict." Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005).

## B. Accessory After the Fact

Suter challenges that, as a matter of law, the trial court erred in finding her guilty as an accessory after the fact to homicide because the Commonwealth failed to prove she had knowledge of the victim's death at the time she aided the principal in fleeing the scene. Put another way, she argues that because Martin did not die until two days after Roberts shot him she could not have possessed the requisite knowledge that a homicide had occurred.[4] This is an inquiry of first impression in the Commonwealth of Virginia.

---

[4] In support of her assignment of error, Suter's brief only stated the three well-known elements required by the common law for a party to be an accessory after the fact generally. Frankly, Suter failed to offer any substantive legal authority to support the specific contentions in her assignment of error. While we find that this failure is not significant enough to warrant procedurally defaulting her assignment of error pursuant to Rule 5A:20(e), we also note that in contrast, the Commonwealth, in its brief, provided extensive authority pertinent to the assignment of error, most of which actually supported the arguments of Suter but none of which were cited or apparently found by counsel for Suter either on brief or in oral argument. We

In pertinent part, Code § 18.2-19 states, "Every accessory after the fact is guilty of (i) a Class 6 felony in the case of a homicide offense that is punishable by death or as a Class 2 felony or (ii) a Class 1 misdemeanor in the case of any other felony." Suter was tried and convicted pursuant to Code § 18.2-19(i).

While Code § 18.2-19 establishes the punishment for an accessory after the fact based upon the underlying crime, the statute does not alter the common-law definition of what constitutes an accessory after the fact.[5] At common law, an accessory after the fact "is a person who knowing a felony to have been committed by another, receives, relieves, comforts or assists the felon." Wren v. Commonwealth, 67 Va. (26 Gratt.) 952, 955 (1875) (citing 1 Hale P.C. 618; 1 Arch. Crim. Pract. 78). The common law has established three basic requirements that must be met to constitute one as an accessory after the fact to a felony. *The first of these is that a completed felony must have been committed.* The second requirement is that the person giving aid must have known of the perpetration of the felony by the one he aids. Finally, the aid must have been given to the felon personally for the purpose of hindering the felon's apprehension, conviction, or punishment. See Wayne R. LaFave, Criminal Law § 13.6, at 753-54 (5th ed. 2010); William Blackstone, Commentaries on the Laws of England, Volume 4, page 38, note 1 (Oxford 1765-1769); see also Harrel v. State, 39 Miss. 702 (1861); State v. Fuller, 552 S.E.2d 282 (S.C. 2001); State v. Tollett, 121 S.W.2d 525 (Tenn. 1938). Our Supreme Court has supplied the following summary of the common-law definition of accessary after the fact to a felony:

---

commend the Attorney General for this level of professionalism in honoring counsel's ethical duty of candor to this Court.

[5] "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-200.

> First, the felony must be complete. Second, the accused must know that the felon is guilty. Third, the accused must receive, relieve, comfort, or assist the felon. It is essential that the accused, at the time he assists or comforts the felon, has notice, direct or implied, that the felon committed the crime.

Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000) (citing Manley v. Commonwealth, 222 Va. 642, 645, 283 S.E.2d 207, 208 (1981)).

In determining whether the accused had knowledge of the underlying felony, the accessory after the fact need not have actual knowledge that the principal is guilty of the felony. Instead, what is required is that the accessory after the fact knew or should have known that the principal was guilty of committing a felony at the time he provided assistance. See Manley, 222 Va. at 645, 283 S.E.2d at 208. After reviewing the cases cited by the Commonwealth and our own extensive research, we conclude that because the common-law rule that the felony must be complete at the time the assistance is rendered has not been modified by the General Assembly, a person cannot, as a matter of law, be convicted as an accessory after the fact to a murder because of aid given after the murderer's acts but before the victim's death. Little v. United States, 709 A.2d 708 (D.C. App. 1998) (defendant not accessory after the fact to homicide, as he transported shooter from scene while both victims were still alive); United States v. Nystrom, 39 M.J. 698 (N.M.C.M.R. 1993) ("the victim must have died prior to the time appellant aided" principal); State v. Chism, 436 So. 2d 464 (La. 1983) ("aid after the murder's acts but before the victim's death" not sufficient); McClain v. State, 268 A.2d 572 (Md. Ct. Spec. App. 1970) (to be an accessory after the fact to murder, the defendant must know that the felony has been completed by the victim's death); Harrel, 39 Miss. at 704-05 (conviction reversed because defendant not accessory after the fact to murder when defendant aided murderer while victim was still alive); State v. Detter, 260 S.E.2d 567 (N.C. 1979) (time of death, not time of murderous conduct, determined whether defendant was an accessory after the fact to murder); Baker v. State, 201

S.W.2d 667 (Tenn. 1947) (for accessory after the fact liability, "it is essential that the homicide be completed by the occurrence of death"). But under such circumstances, the aider may be found to be an accessory after the fact to malicious wounding which, in the Commonwealth, statutorily carries a lesser penalty.[6]

We do note that a small minority of jurisdictions have departed from the requirement that the death must have occurred prior to the rendering of assistance. For example, our sister state of Kentucky, in Maddox v. Commonwealth, 349 S.W.2d 686 (Ky. 1960), has judicially adopted a more relaxed standard. The Kentucky Supreme Court explained that its deviation from the common law was based on the fact that, as in Virginia, the Kentucky legislature had statutorily reduced the penalty for accessory after the fact from that found at common law:

> It is contended, however, that the evidence did not prove Maddox was given enough details of the shooting to know at the time whether the victim was dead or alive, hence he could not have known a murder had been committed. At common law one could not be an accessory unless the felony was complete. "Thus, aiding the guilty party after he has given another a mortal wound, but before death has resulted therefrom, does not make the person giving such aid an accessory to the homicide." Roberson's New Kentucky Criminal Law and Procedure (2d ed.), § 190; I Bishop's Criminal Law 364, (§ 632); 14 Am.Jur. 837 (Crim. Law, § 102); Harrel v. State, 39 Miss. 702 (1861). It must be recalled, however, that "under the common law an accessory after the fact was subject to the same punishment as the principal, 5 Blackstone p. 449; our statute reduced the offense to a misdemeanor." White v. Commonwealth, 301 Ky. 228, 191 S.W.2d 244, 247 [(1945)]. This circumstance is relevant in that the degree of punishment may then have required a greater nicety of proof than should now be considered necessary. Under our statute, KRS 431.170, the accessorial crime is a misdemeanor, an offense without degree, not dependent on the degree of the principal's crime, but only on his guilt of felony.
> The culprit's work was complete when he fired the fatal shot or shots. He had committed a felony. Whether the victim

---

[6] At common law, all accessories before or after the fact and all principals in the second degree were liable to the same punishment as the one who actually committed the crime. 5 Blackstone p. 449. Code § 18.2-19 modifies that common-law doctrine only with respect to punishment of accessories after the fact.

> lived or died fixed the gravity of his crime and the severity of
> punishment authorized by the law to be inflicted upon him, but it
> had no such relationship to an accessory after the fact. Therefore,
> the reason for the common-law rule just stated does not apply. It is
> our opinion that the jury was authorized to find from the evidence
> that Maddox had sufficient information to put him on notice that
> Warren had committed a felonious shooting. This was enough to
> lay upon Maddox the interdict of the law against rendering
> assistance to him.

Maddox, 349 S.W.2d at 689-90.

The Commonwealth encourages this Court to adopt the Kentucky Supreme Court's rationale or in the alternative, the following standard set by the United States Court of Appeals for the Fourth Circuit: "the [defendant] must have had knowledge that the [victim] was dead *or dying* at the time of his decision" to provide assistance. United States v. Cabellero Fernandez, 526 F. App'x 270, 280 (4th Cir. 2013) (emphasis added); United States v. McCoy, 721 F.2d 473, 475 (4th Cir. 1983). In Cabellero Fernandez, the Fourth Circuit found the evidence insufficient to convict despite the fact that Cabellero Fernandez witnessed the principal shoot at the victim and heard the victim moaning in pain. This is because "not all gunshots are fatal." Caballero Fernandez, 526 F. App'x at 281. Thus, even if we were to adopt the rationale of the Fourth Circuit, the end result would be that the accessory after the fact must be certain of the victim's death or impending death.[7]

We decline to adopt either the rationale of the Kentucky Supreme Court in Maddox or that of the Fourth Circuit in Cabellero Fernandez. If a departure is to be made from the common law with respect to the requirements for conviction of accessory after the fact to a murder, it is the province of the General Assembly to make that departure and it is not the proper role of this Court to do so. Bruce Farms, Inc. v. Coupe, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978); see also Doscoli v. Commonwealth, 66 Va. App. 419, 426 n.2, 786 S.E.2d 472, 476 n.2 (2016)

---

[7] While the McCoy court did find the evidence sufficient to convict, the accessory after the fact in that case witnessed the victim bleeding out in his prison cell. 721 F.2d at 475.

("[W]e recognize that the authority to abrogate the common law rests with the General Assembly and not with this Court.").

In this case, the facts, as viewed in the light most favorable to the Commonwealth, establish that Suter observed the altercation between Roberts and Martin, saw Roberts produce the gun, saw Roberts fire the gun at Martin, and immediately thereafter she drove Roberts away from the scene. However, while conceding, on brief, that she knew Roberts had committed a crime at the time she provided assistance to Roberts by driving him away from Tropical Delights, a homicide had not yet occurred because Martin did not die until two days later. Thus, the evidence in the light most favorable to the Commonwealth does not establish that she was aware that Roberts had committed a homicide offense that is punishable by death or a Class 2 felony—in other words a capital murder or first-degree murder.

III. Conclusion

Based on the common-law requirements for the crime of accessory after the fact as applied to capital murder or first-degree murder, the completed felony of murder had not occurred when Suter rendered aid to the principal, Roberts, because a person cannot be convicted as an accessory after the fact to a murder because of aid given before the victim's death. The facts, in the light most favorable to the Commonwealth, are undisputed that the victim's death did not occur until two days after Suter drove the getaway car from the scene of the shooting. Accordingly, we reverse Suter's conviction and remand to the trial court for a new trial on a charge of misdemeanor accessory after the fact pursuant to Code § 18.2-19(ii) if the Commonwealth be so advised.

Reversed and remanded.

- 11 -